520 So.2d 645 (1988)
Peter David FITZGERALD, Appellant,
v.
Elizabeth MOLLE-TEETERS, Appellee.
No. 87-1544.
District Court of Appeal of Florida, Second District.
February 19, 1988.
*646 Claire L. Hamner of Dickinson, O'Riorden, Gibbons, Quale, Shields & Carlton, P.A., Sarasota, for appellant.
C. Samuel Newman of L.D. Beltz & Associates, St. Petersburg, for appellee.
PARKER, Judge.
Appellant Fitzgerald, the defendant below, appeals from the trial court's order granting a new trial. Appellee/plaintiff Molle-Teeters sought damages for a permanent injury resulting from a 1983 automobile accident in which Fitzgerald was the driver of an automobile, and Molle-Teeters was the passenger in another vehicle. Fitzgerald admitted liability before the trial.
The sole issue before us is whether the trial court committed reversible error in granting a new trial. We reverse and set aside that order.
The following reasons were listed by the trial court for granting a new trial:
1. In the verdict, the jury found Molle-Teeters had suffered a permanent injury.
2. Since Fitzgerald admitted liability, there was no question of comparative negligence.
3. The amount awarded ($8,614.25) was exactly three dollars ($3.00) more than Molle-Teeters' total medical bills and past lost wages.
4. Molle-Teeters, at 29 years, had a life expectancy of approximately fifty years, a fact of which the jury was made aware.
5. Molle-Teeters presented evidence that she incurred pain and suffering, disability, mental anguish and loss of capacity for the enjoyment of life for a period subsequent to the accident.
6. Molle-Teeters submitted evidence that the medical bills were a result of the accident, and were reasonable and necessary.
7. Evidence was presented that the lost income of $900 was a result of the accident.
8. An award of $3.00 to compensate Molle-Teeters for pain and suffering, disability, mental anguish and loss of capacity for the enjoyment of life, both past and future, was inadequate and clearly contrary to the law.
At the time of the accident in question, Molle-Teeters was 25 years old, and the *647 evidence presented at trial revealed that even prior to the 1983 accident, she had experienced significant medical problems:
a. After involvement in a 1975 automobile accident, she continues presently to experience an occasional stiff neck, following a night's sleep.
b. She received a 1980 medical discharge from the Marine Corps because of developing back and hip pain.
c. A 1982 automobile accident, which Molle-Teeters described as "really bad," resulted in neck problems which have never been completely resolved.
d. After seeking treatment in 1982, she received a neurosurgeon's diagnosis of Grade 4 spondylolistheseis of "L5 on S1" (resulting in pain in the back) and a right S1 radiculopathy condition (causing pain shooting down the leg to the foot). Medical testimony described these conditions as congenital, or "acquired" before 1982.
e. In 1983, Molle-Teeters sought treatment from another neurosurgeon, complaining of back and right leg pain. She mentioned to the doctor that she had major pelvic surgery in 1978 and had received a warning sign of back problems at the time of the surgery, but had attributed this to the surgery, not realizing she had back problems until they were diagnosed in 1980 while in the Marine Corps.
Molle-Teeters testified that she had a history of pelvic inflammatory diseases extending over nine years, which included two or three surgeries for that condition. The expert medical evidence presented at trial was in conflict as to whether the 1983 accident caused any permanent injury, or aggravated a previously existing condition.
Dr. Alvis, a neurologist, one of two expert witnesses testifying for Molle-Teeters, whose deposition was read at trial, examined her on one occasion, and testified that as a result of the 1983 accident, Molle-Teeters suffered from an impairment of the neurological control of the bladder caused by impact to the cauda equina nerves. Dr. Alvis testified he could reach that opinion to a reasonable degree of medical certainty. Dr. Alvis admitted that Molle-Teeters did not inform him about the 1975 and 1982 automobile accidents, and that in order to confirm a neurogenic bladder condition, which he suspected, further work needed to be done, "[b]ecause all we have at this point is, from the history she's given us."
Dr. Insoft, a urologist to whom Dr. Alvis referred Molle-Teeters, opined that the bladder problem, manifested by frequent urination only at night, was inconsistent with a permanent injury to the bladder's nerve supply. Dr. Insoft observed that such an injury would result in frequent urination being present both day and night.
Dr. Bruce, a chiropractor who treated Molle-Teeters almost three years following the 1983 accident did not testify.
Molle-Teeters' medical bills, admitted into evidence at trial, were as follows:

PROVIDER DATES
 OF SERVICE AMOUNT
Sarasota Memorial
 Hospital 11/24/83 $ 323.25
Radiology Associates
 of Sarasota 11/24/83 85.00
Robert Bruce, D.C. 12/4/83-9/3/86 2,594.00
The Chiropractic
 Center, P.A. 4/9/84 90.00
Mobile Medical Services,
 Inc. 9/25/84 950.00
Angelo M. Alvis,
 M.D., P.A. 3/18/86-4/2/86 1,990.00
C.T. Scanning Professional
 Assoc. 3/18/86 900.00
Michael W. Meriweather,
 M.D. 6/12/86-1/29/87 115.00
L.W. Blake Memorial
 Hospital 7/23/86 50.00
Marc S. Kallins,
 M.D. 7/23/86-1/29/86 616.00
 _________
TOTAL $7,713.25

This court recognizes that "[f]ew decisions of a lower court are granted greater deference in our judicial system than a trial court's order granting a new trial. The trial court has `broad discretion' in its decision." McNair v. Davis, 518 So.2d 416 (Fla. 2d DCA 1988) (citing Ford Motor Co. v. *648 Kikis, 401 So.2d 1341, 1342 (Fla. 1981)). In attempting to arrive at the standard for review of an order granting a new trial, an examination of prior decisions reveals two differently worded tests.
One group of cases applies the principle that if a jury, as reasonable persons, could find the verdict that was reached, then the jury's verdict should not be disturbed. Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978). "A jury's determination of damage is reviewable by the trial judge on precisely the same principles as govern his superintendence of determinations of liability... . The record must affirmatively show the impropriety of the verdict or there must be an independent determination by the trial judge that the jury was influenced by considerations outside the record... . [t]he trial judge does not sit as a seventh juror with veto power. His setting aside a verdict must be supported by the record." Id. at 435 (quoting Laskey v. Smith, 239 So.2d 13, 14 (Fla. 1970)).
Upon review of an order either granting or denying a new trial, based upon the amount of damages, an appellate court is bound to test the adequacy or inadequacy of a verdict, not by what the reviewing court would have decided had it tried the case, but rather whether it can be said that the jurors as reasonable men could not have reached the verdict they did. Shaw v. Puleo, 159 So.2d 641 (Fla. 1964); see also Schmidt v. Tracey, 150 So.2d 275 (Fla. 2d DCA 1963). A jury is not precluded from inquiring into the reasonableness and necessity of the medical expenses. Crutcher Resources Corp. v. Rayner, 283 So.2d 392 (Fla. 2d DCA 1973). A jury could disbelieve a plaintiff's testimony regarding pain and suffering or attribute the pain to a congenital condition. Id. Absent a showing of circumstances, such as those alluded to in Radiant Oil Co. v. Herring, 146 Fla. 154, 200 So. 376 (1941), an appellate court must assume that the jury considered all elements of damage. City of Miami v. Smith, 165 So.2d 748 (Fla. 1964). Jurors may conclude that there was no compensable pain and suffering, even where the plaintiff had incurred medical expenses and was to that extent entitled to recover. Id. at 750; White v. Martinez, 359 So.2d 7 (Fla. 3d DCA 1978).
The second line of cases reviewing orders granting or denying motions for new trial speak of a "reasonable man" test, applicable not to that which was done by the jury, but to the trial court's decision. Thus, "[i]f reasonable men could differ as to the propriety of the action taken by the trial court, then there is no abuse of discretion," and the order must stand undisturbed by the appellate court. Kikis; McNair.
We conclude that in the final analysis both tests mean essentially the same thing even though one is aimed at the jury's determination and the other focuses upon the trial court's action. A combination of those tests is contained in Crown Cork & Seal Co. v. Vroom, 480 So.2d 108, 110 (Fla. 2d DCA 1985), i.e., if reasonable men can differ as to whether the verdict was against the manifest weight of the evidence, a trial court may not properly grant a motion for new trial.
In any event, Wackenhut requires that an order granting a new trial set forth the reasons which will support the trial court's setting aside of the verdict, with specific references to the record in support of the trial court's conclusion. Here, the order granting a new trial discloses insufficient facts to substantiate the trial court's decision to set aside the verdict.
In addition, an independent review of the record before us does not support the trial court's conclusion that the jury verdict reflected only a three-dollar award for Molle-Teeters' pain and suffering, disability, mental anguish and loss of capacity for the enjoyment of life. In reaching that conclusion, the trial judge improperly sat as a seventh juror and reweighed the evidence in the case. Wackenhut. That was an abuse of his discretion. Kikis. It cannot reasonably be said that the jury could not have reached the verdict it announced, based upon a record reflecting Molle-Teeters' pre-existing congenital or acquired back and leg conditions, her recurring back and neck problems as an outgrowth from two earlier accidents, substantial conflicting *649 expert medical opinion concerning the cause of her continuing medical problems, and a one-time visit to a neurologist whose charges represented 25% of Molle-Teeters' total medical expenses, and 23% of her total damages.
We, therefore, reverse and remand the order of the trial court with the direction that it reinstate the jury verdict in favor of Molle-Teeters, and grant other relief as is consistent with this opinion.
LEHAN, A.C.J., and FRANK, J., concur.