547 So.2d 669 (1989)
Richard HAWK and Maureen B. Adams, As Personal Representatives of the Estate of Vanessa M. Hawk, a Deceased Minor and Maureen B. Adams, As Personal Representative of the Estate of Melissa B. Sullivan, a Deceased Minor, Appellants/Cross-Appellees,
v.
SEABOARD SYSTEM RAILROAD, INC., Appellee/Cross-Appellant.
David R. Pitts and Mary L. Pitts, Appellees.
No. 88-00942.
District Court of Appeal of Florida, Second District.
July 5, 1989.
*670 Jos. W. Womack, W. Sam Holland and J. Robert Kirk of Kimbrell & Hamann, P.A., Miami, for appellants/cross-appellees.
Sara Blair Lake of Melkus & Hunter, P.A., Tampa, for appellee/cross-appellant, Seaboard System R.R., Inc.
No appearance for appellees/cross-appellant, David and Mary Pitts.
THREADGILL, Acting Chief Judge.
Richard Hawk and Maureen Adams, as parents and personal representatives of the estate of Vanessa Hawk, a deceased minor, and Maureen Adams as personal representative of the estate of Melissa Sullivan, a deceased minor, appeal an order of remittitur or new trial in their wrongful death action against Seaboard System Railroad. We find the trial court abused its discretion in ordering remittitur or a new trial on damages, and quash the order with instructions that the jury verdict be reinstated.
On November 15, 1984, at around 8:00 in the evening, Maureen Adams was driving eastward on New Hope Court in Hillsborough County, taking her daughters, ten-year-old Melissa and three-year-old Vanessa, and their young friend, Sharon Pitts, to Sharon's home. New Hope Court was then a rutted, unpaved, one-lane road, heavily overgrown with tall brush and overhanging trees. Ms. Adams had traveled the road before and testified that she knew there was a railroad crossing ahead, and was searching in the darkness for a yellow railroad warning sign.
As Ms. Adams neared the New Hope crossing, a northbound Seaboard train was approaching the crossing at approximately fifty miles an hour. Some 1,500 feet before the New Hope crossing, the train rounded a long, blind curve, at the end of which was a "W" whistle sign. Ms. Adams never heard the whistle and residents who lived nearby testified that on the night of the accident the train did not sound the whistle. Ms. Adams testified that she never knew she was at the crossing.
The train hit the right side of the car with such force that the back seat was blown out of the car. The bodies of the three little girls were later found from thirty to seventy feet northeast of the crossing. Testimony at trial indicated that the approach to the crossing was obscured by a gentle hill, and that on the night of the accident there was a large mound of dirt overgrown with weeds in front of the crossing. The wooden crossbucks were covered by shrubs; the yellow crossing sign was missing.
Ms. Adams sued Seaboard and several crew members for the wrongful deaths of Melissa and Vanessa. Melissa's father was deceased, but Vanessa's father, Richard Hawk, joined in bringing the claims for Vanessa's estate. A wrongful death claim by the parents of Sharon Pitts was settled before trial for $215,000, and Seaboard subsequently filed a claim against Ms. Adams for contribution, alleging negligence. Voluntary dismissals of Seaboard's employees were taken before submission of the case to the jury.
After an eight-day trial, the jury found Seaboard ninety percent negligent in the accident and Maureen Adams ten percent negligent. The jury awarded Ms. Adams $1,200,000 for the wrongful death of her ten-year-old daughter Melissa, and $800,000 for the wrongful death of her three-year-old daughter Vanessa. The jury also awarded $500,000 to Vanessa's father and funeral expenses to each child's estate.
*671 Seaboard moved for a new trial or remittitur. The court denied the motion for a new trial as to liability, but ordered a remittitur of $500,000 from the verdict for Maureen Adams and $250,000 from the verdict for Richard Hawk, or a new trial on damages. The appellants declined remittitur and appealed the order. Seaboard cross-appealed, contending that the trial court erred in excluding scene reconstruction photographs proffered by Seaboard, and that the conduct of the appellants' lawyer was so prejudicial that Seaboard was denied a fair trial.
A jury is accorded wide latitude in determining the amount of non-economic damages. Rety v. Green, 546 So.2d 410 (Fla. 3d DCA 1989). While this wide latitude is subject to review, the trial court does not sit as a seventh juror with veto power and may not substitute its judgment on damages. Laskey v. Smith, 239 So.2d 13 (Fla. 1970). The court however has an affirmative duty to enter remittitur or grant a new trial when it determines that the record shows that the verdict is against the manifest weight of the evidence or that the jury was influenced by matters outside the record. Allred v. Chittenden Pool Supply Inc., 298 So.2d 361 (Fla. 1974); Cloud v. Fallis, 110 So.2d 669 (Fla. 1959).
When the court has made such a determination, the order granting a new trial must give express reasons from the record in support of one of these two conclusions. Wackenhut Corp. v. Canty, 359 So.2d 430 (Fla. 1978); Crown Cork & Seal Co., Inc. v. Vroom, 480 So.2d 108 (Fla. 2d DCA 1985). See also Ashcroft v. Calder Race Course, Inc., 492 So.2d 1309 (Fla. 1986); Reynolds v. Towne Management of Florida, Inc., 426 So.2d 1011 (Fla. 2d DCA 1983). Appellate review of an order for a new trial is primarily limited to the reasons specified in the order, Allred, 298 So.2d 361, and the appropriate standard of review is whether there has been a clear showing of abuse of discretion. Smith v. Brown, 525 So.2d 868 (Fla. 1988); Winn Dixie Stores, Inc. v. Robinson, 472 So.2d 722 (Fla. 1985).
Here, the written order granting remittitur or new trial states that the verdict was against the manifest weight of the evidence but does not set forth specific findings from the record to support that conclusion.[1] Nor does our independent review of the evidence reveal a sufficient factual basis on which this conclusion can be affirmed. For a verdict to be found against the manifest weight of the evidence, the evidence must be "clear, obvious and indisputable." McNair v. Davis, 518 So.2d 416 (Fla. 2d DCA 1988); Perenic v. Castelli, 353 So.2d 1190 (Fla. 4th DCA 1977), cert. denied, 359 So.2d 1211 (Fla. 1978). Where the evidence is conflicting, the weight to be given to that evidence is in the province of the jury and, as the fourth district noted in Perenic, "[t]o allow the court to invade this province of the jury would violate the right to a jury trial." 353 So.2d at 1192. See also Harper v. City of Tampa, 374 So.2d 1385 (Fla. 2d DCA 1979).
We do not find the evidence of damages in this case so "clear, obvious and indisputable" that the court could find the jury verdict to be against the manifest weight of the evidence. Although Seaboard vigorously contested liability, it did *672 not seriously dispute the amount of damages. Testimony indicated that Ms. Adams had received extensive psychiatric counseling after the accident, had missed months of work, and was still on medication at the time of the trial. Although, as the court noted, Richard Hawk did not take the stand, both Ms. Adams and her mother testified that he had been an attentive and loving father and was deeply grieved by Vanessa's death. From all the evidence, the jury could form a reasoned and substantiated judgment about the relationships within this family and the grievous loss. Great effect is given to the fact-finder's award of damages. Allred, 298 So.2d at 365.
In its written order, the court also cited the appellants' stipulation to the reasonableness of the $215,000 settlement with the Pitts family as a basis for remittitur or new trial. We do not find the fact that the family of one victim accepted settlement of a certain amount to be indicative of the value of the claims for the deaths of other victims, and find nothing in this record to suggest that the stipulation was representative of the value of these claims. Moreover, the fact that the jury valued the claims before it at a greater figure than that to which counsel had stipulated in the related case cannot justify a finding of improper influence upon the jury. Such a finding is not supported by the record and is mere speculation.
The only reason given to support the trial court's conclusion that the jury must have been influenced by passion, prejudice or great mistake in reaching its verdict was its disagreement with the size of the verdict. Absent a basis in the record, such disagreement does not authorize the trial court to substitute its judgment for that of the jury. Wackenhut, 359 So.2d at 430. That a damage award is large does not alone render it excessive, nor does it indicate that the jury was motivated by improper considerations. Allred, 298 So.2d at 365. Where the record supports the award, a court's conclusion that the amount is indicative of prejudice or passion, or shocking to its judicial conscience, can constitute an abuse of discretion. Id. In Bould v. Touchette, 349 So.2d 1181 (Fla. 1977), our supreme court stated:
The court should never declare a verdict excessive merely because it is above the amount which the court itself considers the jury should have allowed. The verdict should not be disturbed unless it is so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury may properly operate. [Citations omitted.]
349 So.2d 1181, 1184-1185. See, e.g., Walt Disney World Co. v. Goode, 501 So.2d 622 (Fla. 5th DCA 1986), review dismissed, 520 So.2d 270 (Fla. 1988) (where the court affirmed a $1,000,000 damage award to each parent of a four-year-old child who drowned). As the supreme court acknowledged in Winner v. Sharp, 43 So.2d 634 (Fla. 1949):
Those who have not brought a child into the world and loved it and planned for it, and then have it suddenly snatched away from them and killed can hardly have an adequate idea of the mental pain and anguish that one undergoes from such a tragedy. No other affliction so tortures and wears down the physical and nervous system... . Damage for mental pain and suffering is one of the late developments in the law and its potentialities are not restricted as they formerly were because so much has been learned of the evil consequences that flow from mental injury.
43 So.2d at 636-637.
We have reviewed the criteria for remittitur contained in section 768.74(5), Florida Statutes (1985), and find that the trial court abused its discretion in ordering remittitur or new trial on damages. The reasons given, that the verdict was against the manifest weight of the evidence and that the jury was influenced by passion, prejudice or matters outside the record are not supported in the record before this court. We find, therefore, that the trial court has impermissibly invaded the province of the jury by substituting its evaluation of the damages.
*673 We have considered Seaboard's arguments on cross-appeal, have examined the proffered exhibits which were excluded from evidence and the transcript of the closing argument, and find no error by the court. Accordingly, we affirm the final judgment as to liability, but quash the order granting remittitur or a new trial on damages, and remand with instructions to reinstate the jury verdict.
Affirmed in part; reversed in part and remanded.
PATTERSON, J., concurs.
ALTENBERND, J., concurs with opinion.
ALTENBERND, Judge, concurring.
The verdict in this case is certainly more than this judge would award as trier of fact. It is undoubtedly higher than many experienced trial lawyers would have predicted prior to the trial. Nevertheless, I find myself in complete agreement with the court's decision.
It is doubtful that this type of monetary award truly functions to compensate a mother and father for the loss of all of their children. This would be true if the award were higher or lower. Money is a poor substitute for children, but it is the only substitute which a trial can provide.
If this court could legislate rather than adjudicate with the funds of Seaboard, one suspects that at least $1,000,000 of this award could be better spent improving the safety of dangerous railroad crossings in this state. This court, however, does not have that luxury. Instead, we are called upon in this case to balance that rule of law which gives the jury great discretion in determining a monetary award and which prohibits the trial judge from sitting as a seventh juror, Bould v. Touchette, 349 So.2d 1181 (Fla. 1977), against the competing rule which gives the trial judge broad discretion to grant a new trial and which requires this appellate court to affirm the trial court's discretionary decision if reasonable persons could differ as to the propriety of that action, Smith v. Brown, 525 So.2d 868 (Fla. 1988). Under the analysis in Ashcroft v. Calder Race Course, Inc., 492 So.2d 1309 (Fla. 1986), this court must defer to the jury's discretion because the record does not contain a basis to permit the trial judge to exercise his discretion. See also Fitzgerald v. Molle-Teeters, 520 So.2d 645 (Fla. 2d DCA), review denied, 529 So.2d 694 (Fla. 1988).[2]
Neither the trial court's order granting new trial nor an independent review of the record establishes a basis to conclude that the jury was influenced by matters outside the record or that its decision was influenced by improper passions or prejudices. Indeed, the jury's verdict apportioned the comparative negligence of Ms. Adams and Seaboard in a fashion which is compatible with the evidence. The jury's award of special damages to the estate of each child precisely adhered to the evidence. This jury simply placed a higher dollar value upon the mental pain and suffering of the parents than would many juries.
In seeking an explanation for this large award, three factors are suggested by the record. First, as emphasized by this court's opinion, this accident was extremely traumatic for the mother. It is difficult to fathom the mental pain and suffering of a mother who instantaneously loses all her children in such a violent accident. While money is a poor measure of such grief, a jury could reasonably find such grief to be immense.
Second, during closing arguments, the plaintiffs' attorney requested an award which totaled $3,500,000. Thus, the plaintiffs' attorney requested an award which was greatly in excess of the award actually *674 granted by the jury. Seaboard primarily contested liability in its closing arguments. Defense counsel expressly declined to suggest any specific smaller award as a more reasonable range for the jury's deliberations. When the defendant does not assist the jury in establishing a range for a verdict, it is more difficult for the defendant to later suggest that a verdict below the plaintiffs' request is somehow a verdict which exceeds the maximum limit of the reasonable range in which the jury was free to operate.[3]
Finally, if there was any question of passion in this case, one could at least speculate that the passion derived from a defense selected by Seaboard. Seaboard introduced expert testimony to suggest that Ms. Adams had seen the train approximately ninety seconds before the accident and that she had intentionally accelerated to ninety miles per hour on this rutted, unpaved one-lane road in an apparent effort to beat the train to the crossing. Such a defense carries with it the risk that  if the jury rejects the defense  it may be offended by the suggestion that the mother essentially killed her own children. When a party's own trial tactics create the risk of adverse jury passion, the court should be hesitant to relieve the party of the fruits of such emotions except in cases of clear error.
In balancing the discretion given to the jury to award damages and the discretion given to the trial judge to order a new trial, it is helpful to remember that our rules of law should encourage negotiation and amicable settlement of civil disputes. When parties choose to present a case to a jury, the risks of an adverse verdict are inherent in that decision. While a trial judge should not hesitate to relieve a party from an unlawful award by a jury, our judicial system should not foster policies which relieve parties of the expected risks of trial. In Bould, the supreme court described the maximum limit of a reasonable range of a verdict from the perspective of the jury. For trial lawyers, it may be helpful to consider the same rule from the parties' perspective. The verdict should not be disturbed unless it is so inordinately large as to obviously exceed the maximum monetary risk which the defendant should assume by its decision to litigate rather than settle a claim. Whether this rule is analyzed from the perspective of the jury or the defendant, it should lead to the same result. Although Seaboard could surely have settled this case for less than the jury's verdict, and the verdict is certainly large, it is not "so inordinately large" that a trial court could reasonably determine that it "obviously" exceeded the maximum range defined by the Bould test.
NOTES
[1] The written order states that "[t]he Court finds that the verdict rendered in this cause is against the manifest weight of the evidence. Counsel for both parties cited cases to the Court of wrongful death verdicts in this state rendered in cases involving minor children. The Court having considered such cases finds that the verdict rendered in this case also involving only non-economic damages arising from the death of a minor child is so inordinately large as obviously to exceed the maximum limit of a reasonable range. There have been cases with higher verdicts but in each special circumstances existed that are absent in the instant matter. The Court notes that RICHARD HAWK did not take the stand and very little was said concerning his loss. It is further noted that counsel for the Plaintiffs, at the commencement of this trial on SEABOARD's claim for contribution, stipulated that Two Hundred Fifteen Thousand Dollars and No Cents ($215,000.00) represented a reasonable settlement by DAVID R. PITTS and MARY L. PITTS for the loss of their ten-year old who also died in this tragic accident. Given the absence of any evidentiary predicate to support so great a verdict, I can only conclude the jury was under the influence of passion, prejudice or great mistake in reaching its verdict."
[2] I am sympathetic with Judge Schwartz' lament that these rules often seem contradictory and that no test has been devised to readily separate cases governed by one rule from the other. Montgomery Ward & Co. v. Pope, 532 So.2d 722 (Fla. 3d DCA 1988) (Schwartz, J., dissenting). This is not an area which lends itself to exact tests. An appellate court should approach the task by giving the trial judge the full benefit of the doubt, while requiring this appellate act of faith to be supported by some proof within the record which reasonably suggests that the jury went astray.
[3] Indeed, even in briefing and at oral argument, Seaboard has not suggested to this court any lower award which it believes to be the maximum limit of the jury's discretion.