606 So.2d 700 (1992)
Jack W. DYES and Ann Dyes, his wife, Appellants,
v.
Glenn J. SPICK and Florida Coca-Cola Bottling Company, a foreign corporation, Appellees.
No. 91-1816.
District Court of Appeal of Florida, First District.
October 12, 1992.
*701 Mark G. Usdin and Dennis R. Schutt of Coker, Myers, Schickel, Cooper & Sorenson, Jacksonville, for appellants.
Jack W. Shaw, Jr. and Michael J. Obringer of Osborne, McNatt, Shaw, O'Hara, Brown & Obringer, Jacksonville, for appellees.
KAHN, Judge.
In this personal injury action, Mr. and Mrs. Dyes appeal the trial court's refusal to grant them a new trial on (1) Mr. Dyes' noneconomic damages, and (2) Mrs. Dyes' derivative claim. We affirm on the second issue, but reverse on the first, finding that the record before us compels a new trial as to one aspect of Jack Dyes' noneconomic damages.
On August 11, 1989, Mr. Dyes' dump truck was struck by another truck owned by Coca-Cola Bottling Company and operated by Mr. Spick. Before trial, the defendants admitted responsibility for the accident and for all damages suffered by the plaintiffs as a result of the accident. In addition to admitting liability, the defense stipulated that Mr. Dyes incurred, prior to the date of the trial, reasonable and necessary medical expenses, as a result of the accident, in the amount of $33,034.65.
The evidence reveals that Mr. Dyes underwent a lumbar myelogram and lumbar disc surgery one month after the accident. His condition necessitated a second myelogram and disc operation in June of 1990. The first surgery required a week's stay in a Jacksonville hospital, followed by a six to eight week period of home convalescence. Mr. Dyes tried to return to work on his doctor's recommendation about four months after surgery, but began once again to experience severe pain in his back and left leg. As a result, his treating physician recommended the second surgery. The record reveals that from January 1990 until June 1990, the date of the second operation, Mr. Dyes endured virtually constant pain, which restricted his activity, as well as his ability to sleep. Following the second lumbar disc operation, Mr. Dyes spent five days in the hospital, followed by six more weeks of home recuperation. The medical testimony at trial indicated that Mr. Dyes now has a 14% permanent whole body impairment as a result of the injury. He will experience intermittent pain in both the low back and his left knee indefinitely into the future. The injuries will restrict Mr. Dyes' ability to engage in prolonged standing, squatting, or any other position that will stress his knee or low back. In all likelihood he will never be able to work a full 40-hour week again.
Much of the jury trial centered around a contest as to the extent of economic loss occasioned Mr. Dyes by his injury. There is no doubt, upon a review of this record, that both the plaintiff and the defense realized that the case involved a significant economic and noneconomic loss. In closing argument, defense counsel suggested that the jury value Mr. Dyes' past pain and suffering at $25,000.00, and that it value Mrs. Dyes' past loss at $10,000.00. Defense counsel made no suggestion as to future noneconomic damages.
*702 The jury awarded Mr. Dyes the stipulated medical expenses, as well as $23,500.00 for past lost earnings or lost earning ability for the 20 months between the date of the accident and the date of trial. The jury further awarded $100,000.00 as the present value of Mr. Dyes' future lost earning ability, and $11,500.00 as the present value of future medical expenses. For past pain and suffering, disability, physical impairment, disfigurement, mental anguish, inconvenience, and loss of capacity for the enjoyment of life (noneconomic damages), the jury awarded Mr. Dyes $5,000.00. For such damages in the future, the jury allowed $11,000.00. The jury awarded Ann Dyes $2,500.00 for her past loss of consortium, and $5,000.00 for her future loss.
At the outset, we note that defense counsel in this case tried the matter in a rational and efficient way, by stipulating to those matters that were not reasonably subject to dispute, and by appropriately contesting other matters. Defense counsel's suggestion of the figure of $25,000.00 for Mr. Dyes' past noneconomic loss, while certainly not binding upon the jury or the trial court, nonetheless represents the reasoned analysis of trial counsel as to a conservative figure of damages that would be supported by the evidence in this case.
Similarly, the mere fact that a noneconomic award represents less than 10% of the amount awarded for past and future economic loss is not, in and of itself, sufficient to support reversal. The damages awarded for medical expenses and wage loss, however, represent compelling evidence of the severity of Mr. Dyes' injuries.
The trial court does not sit as a seventh juror. Laskey v. Smith, 239 So.2d 13 (Fla. 1970); Hawk v. Seaboard Sys. R.R., Inc., 547 So.2d 669 (Fla. 2d DCA 1989), rev. dismissed, 549 So.2d 1014 (Fla. 1989). Neither does the reviewing court reserve the prerogative to overturn a damages verdict with which it merely disagrees. In Griffis v. Hill, 230 So.2d 143 (Fla. 1969), the supreme court decided that in determining the adequacy of a verdict the reviewing court must decide whether a jury of reasonable men could have returned that verdict. The use of the term "reasonable men" connotes the application of an objective standard, and requires a determination of whether the verdict is actually based upon the law and evidence as presented at trial. As the supreme court stated:
This test is simply stated but may be difficult to apply in a particular case. The appellate court must be ever alert against the temptation to substitute its `verdict' for that of the jury. On the other hand, the court must not refuse to act to relieve the injustice of either a grossly inadequate or excessive verdict.
Id. at 145.
Indeed, the reviewing court has an obligation to act in cases where the verdict is grossly inadequate. Weaver v. Wilson, 532 So.2d 67 (Fla. 1st DCA 1988); Diaz v. Xtra Super Food Centers, Inc., 579 So.2d 893 (Fla. 3d DCA 1991); Dorvil v. Purolator Courier Corp., 578 So.2d 294 (Fla. 3d DCA 1991); Tarin v. City Nat'l Bank of Miami, 557 So.2d 632 (Fla. 3d DCA 1990).
In a recent case, the Third District concluded that awards of $5,000.00 for past and $5,000.00 for future noneconomic damages were shockingly inadequate in the face of uncontradicted evidence that the plaintiff had sustained two herniated discs, with accompanying undisputed past and future pain and suffering as the result of an accident. Figueredo v. Keller Indus., Inc., 583 So.2d 432 (Fla. 3d DCA 1991), rev. denied, 595 So.2d 52 (Fla. 3d DCA 1992). On the other hand, the supreme court has noted that not every verdict which raises a judicial eyebrow would shock the judicial conscience. Laskey v. Smith, supra. Fortunately, reviewing courts need not jump immediately to a conclusory analysis of whether a damages award is "shockingly" excessive or inadequate.
By enacting the Tort Reform and Insurance Act of 1986, Chapter 86-160, Laws of Florida, the legislature has attempted to provide guidance which we are compelled to follow. In passing this rather dramatic change in Florida tort law, the legislature made several prefatory findings, including the following:

*703 WHEREAS, the Legislature desires to provide a rational basis for determining damages for noneconomic losses which may be awarded in certain civil actions, recognizing that such noneconomic losses should be fairly compensated and that the interests of the injured party should be balanced against the interests of society as a whole, in that the burden of compensating for such losses is ultimately borne by all persons, rather than by the tortfeasor alone. (e.s.)
Ch. 86-160, Laws of Fla. The body of the act contains further findings, including, "the purpose of this act [is] ... to ensure that injured persons recover reasonable damages... ." Id., § 2.
Two important aspects of tort reform are the itemized verdict statute, section 768.77, Florida Statutes (1989), and the remittitur and additur statute, section 768.74, Florida Statutes (1989). This court has previously held that the itemized verdict statute, requiring a jury to specifically calculate each line item of damages awarded to a personal injury plaintiff, serves the beneficial purpose of allowing the court to scrutinize each item of damages in light of the evidence actually presented in support of that item. Edward M. Chadbourne, Inc. v. Van Dyke, 590 So.2d 1023 (Fla. 1st DCA 1991). By passage of section 768.74, the legislature stated its intention that awards of damages be subject to "close scrutiny by the courts and that all such awards be adequate and not excessive." Section 768.74(3), Fla. Stat. (1989). The statute sets out five criteria to be applied by the court in determining the adequacy of a verdict:
(a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;
(b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;
(c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;
(d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injuries suffered; and
(e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.
§ 768.74(5), Fla. Stat. (1989).
Applying these criteria, we conclude that, at the least, elements (b), (d) and (e) are pertinent to the awards here under review. We find that the line item award for Mr. Dyes' past noneconomic damage is not supported by the evidence, and bears no reasonable relation to the damages proved and the injury suffered. Accordingly, and with due regard for the "soundness and logic" of judicial resolution of the often perplexing problems raised in cases involving noneconomic loss, we reverse and remand this case for a new trial on past noneconomic damages. See § 768.74(6), Florida Statutes (1989).
We have not ignored appellees' citation of numerous cases upholding seemingly very low jury awards, in deference to the jury's wide latitude in determining the amount of noneconomic damages. E.g., Fitzgerald v. Molle-Teeters, 520 So.2d 645 (Fla. 2d DCA 1988), rev. denied, 529 So.2d 694 (Fla. 1988); White v. Martinez, 359 So.2d 7 (Fla. 3d DCA 1978); White v. Bacon, 166 So.2d 678 (Fla. 1st DCA 1964); Schmidt v. Tracey, 150 So.2d 275 (Fla. 2d DCA 1963), cert. denied, 159 So.2d 645 (Fla. 1964); Weiss v. Goldman, 120 So.2d 812 (Fla. 3d DCA 1960). These cases were all decided upon facts that occurred prior to the 1986 statutory enactments applied by this court today. None of these cases involved itemized verdicts, and it was, thus, impossible for the reviewing court to determine the exact amount of noneconomic (or economic) damages awarded. These cases are further distinguishable in that the present case reflects a stipulation as to reasonable and necessary medical expenses. Thus, the jury was not here free to simply disregard (or discredit) the periods of hospitalization and the instances of surgery, nor the attendant pain and disability.
*704 This analysis does not compel a new trial on future damages or on Mrs. Dyes' consortium award. The nature of future damages is such that much discretion must be afforded to the finder of fact. While as to past damages we have a record that allows us to scrutinize very closely what has already happened, the same cannot be said as to future losses. Due to the somewhat speculative nature of what may occur in the future, it is perhaps not unwise to afford great latitude to the jury in its determinations as to these damages. The evidence in this regard in the instant case reflects the uncertainty of predicting future pain and suffering. The jury may well have concluded, for example, that despite Mr. Dyes' disability from working, the second back operation may succeed in alleviating his suffering. The jury could also reason that once the plaintiff's economic losses are satisfied by fair verdict, thus relieving a legitimate source of tremendous worry and concern, his subjective quality of life might well improve. Accordingly, while we have undertaken to review each individual item of damage, we do not conclude that a finding of inadequacy as to past damages compels a similar finding as to future damages, on the facts of this case.
In reviewing Mrs. Dyes' claim, we note that various factors in this record including, but not limited to, the length of the marriage and the magnitude and nature of the economic damages, provide adequate support for the jury verdict. Particularly, we note that much of the testimony offered by Mrs. Dyes involved her added responsibilities with the family business, her worry and concern about the business, and stress created by these financial concerns. Testimony indicated that the Dyes together operated a dirt hauling business for which much responsibility fell upon Mrs. Dyes after the accident. Given the substantial award to Mr. Dyes for economic loss, and the interrelationship between this loss and the damages claimed by Mrs. Dyes, we cannot say that the consortium award was inadequate as a matter of law.
Reversed and remanded for proceedings consistent with this opinion.
BOOTH, J., concurs.
WOLF, J., specially concurs with written opinion.
WOLF, Judge, specially concurring.
In Odoms v. Traveller's Ins. Co., 339 So.2d 196 (Fla. 1976), the supreme court found that the jury has considerable discretion in awarding unliquidated damages which are not subject to measurement by a particular standard. This discretion extends to the award of noneconomic damages. Hawk v. Seaboard System R.R., Inc., 547 So.2d 669 (Fla. 2nd DCA 1989). The majority opinion appears to suggest, however, that the Legislature, by a wave of their magic pen, has converted what is basically a subjective determination concerning the value of pain and suffering into an objective determination with particularized standards. While I don't disagree that it was the legislative intent to provide for more predictability in jury verdicts in tort cases by the enactment of section 768.74(3), Florida Statutes (1989), I do not believe that the basic nature of these types of damages has changed. Thus, while criteria have been set out in the statute to be utilized in considering the adequacy of excessiveness of all damages, these criteria do not reach the certainty of particularized standards especially in the case of noneconomic damages.
Prior to the enactment of the statutory criteria in section 768.74(5), Fla. Stat. (1989), the test for intervention by the judiciary into the area of a jury verdict for noneconomic damages was whether the verdict was against the manifest weight of the evidence or that the jury was influenced by matters outside the record.[1]See Hawk, supra. While I believe that the statutory criteria which have been adopted should be utilized as an aid to determine the adequacy *705 or excessiveness of a verdict, the basic test for reviewing noneconomic damage awards remains the same as the one identified in Hawk, and the jury should still be given wide latitude in determining noneconomic damages.[2]
In applying the Hawk test to the instant case, I agree with the majority that the jury award of only $5,000 for past pain and suffering, in light of the uncontroverted evidence concerning the serious nature of the injuries and medical treatment which had already occurred, is against the manifest weight of the evidence.[3] As recognized by the majority, however, the same cannot be said for the future noneconomic damages.
The doctor who saw appellant to evaluate his pain problems testified as follows:

[M]ore likely than not he [Mr. Dyes] would continue to have intermittent back pain and knee pain indefinitely in an intermittent fashion
and
Mr. Dyes could have permanent pain on an intermittent basis even after completing work-hardening management programs.
The jury was left to wrestle with equivocal phrases such as "more likely" and "could have" and indefinite terms such as "intermittent." The meaning of these statements in the context of pain and suffering awards cannot be considered to be a purely objective determination. Courts should be extremely reluctant to overturn the factual determination of the jury as to future noneconomic damages notwithstanding the passage of the Tort Reform Act.[4]
NOTES
[1] The standard for a court in reviewing a jury verdict has been alternatively stated as whether a jury of reasonable men [persons] could have returned the verdict. Griffis v. Hill, 230 So.2d 143 (Fla. 1969).
[2] If the statute provides for any further discretion to the judiciary to review jury verdicts, it is given to the trial judge rather than the reviewing appellate court. See § 768, Fla. Stat. (1989).
[3] This is especially true in light of the stipulation as to reasonable and necessary medical expenses.
[4] This standard should apply in either reviewing the excessiveness or inadequacy of a verdict.