ON REMAND FROM THE SUPREME COURT OF FLORIDA
 

 WALLACE, Judge.
 

 In
 
 Aills v. Boemi,
 
 29 So.3d 1105 (Fla. 2010), the Supreme Court of Florida quashed, in part, this court’s decision in
 
 Aills v. Boemi,
 
 990 So.2d 540 (Fla. 2d DCA 2008). Accordingly, the mandate of this court issued in this case on October 17, 2008, is withdrawn; the opinion and judgment of this court filed on June 13, 2008, is withdrawn and vacated insofar as it is in conflict with or fails to conform to the views expressed in the opinion and judgment of the Supreme Court of Florida; and the opinion and judgment of the Supreme Court of Florida are adopted and made part of the opinion and judgment of this court. We adhere to our prior judgment and opinion except as it is withdrawn and vacated.
 

 On remand, the Supreme Court of Florida directed this court to consider two issues which were raised on appeal but not reached in this court’s prior decision. The two issues before us on remand are (1) Christy Aills’ challenge to the trial court’s order for a remittitur of the past and future noneconomic damages award and (2) the objections by Luciano Boemi, M.D., and Luciano Boemi, M.D., P.A. (collectively referred to as Dr. Boemi), to the award of future medical expenses.
 
 Aills,
 
 29 So.3d at 1110. Because Ms. Aills has failed to make a clear showing that the trial court abused its discretion in ordering a remittitur of the past and future noneco-nomic damages award, we affirm the trial court’s order, and we remand for a new trial on damages on those issues. Also, because the evidence presented does not support the award of future medical expenses, we reverse the trial court’s denial of Dr. Boemi’s motion for remittitur of that award and remand for further proceedings on that issue.
 

 I. INTRODUCTION
 

 Ms. Aills sued Dr. Boemi for medical negligence after he performed cosmetic procedures on her breasts during a single surgery on April 16, 2003. Although the parties disputed the nature of the procedures performed and to which Ms. Aills consented, the evidence reflected that the surgery included the removal of breast tissue and the insertion of implants. After the surgery, some of Ms. Aills’ remaining breast tissue became necrotic and died, resulting in significant tissue loss and the loss of both areola and nipples. Ms. Aills underwent a number of painful procedures to remove the dead tissue and to graft healthy tissue onto her breasts. Ms. Aills incurred significant scarring and misshaping of her breasts, and she is unable to nurse any children that she may have in the future. At the time of the surgery, Ms. Aills was twenty-eight years old.
 

 Following a jury trial, the jury determined that there was negligence on the part of Dr. Boemi in his treatment and care of Ms. Aills that was a legal cause of loss, injury, or damage to Ms. Aills.
 
 [1]
 
 The
 
 *1025
 
 jury returned a verdict for Ms. Aills for past medical expenses in the amount of $100,000, for future medical expenses in the amount of $150,000, for past pain and suffering in the amount of $4,000,000, and for future pain and suffering in the amount of $4,000,000. The trial court entered a judgment in favor of Ms. Aills and against Dr. Boemi in the amount of $8,250,000.
 

 Dr. Boemi filed a motion seeking, in part, remittitur as to the amounts of the damage awards. Following a hearing and additional written argument by the parties, the trial court entered an order reducing the award for past medical expenses to $81,000 and denying Dr. Boemi’s request to reduce the future medical expenses awarded. The trial court also directed a remittitur of Ms. Aills’ past noneconomic damages award in the amount of $3,250,000 and a remittitur of her future noneconomic damages award in the amount of $2,250,000, providing for a total noneconomic damages award after remitti-tur in the amount of $2,500,000. Ms. Aills agreed to the remittitur with respect to the award of past medical expenses. But she rejected the remittiturs of the noneco-nomic damages awards, and the trial court entered an order for a new trial on damages. Ms. Aills appealed and challenged the ordered remittiturs with respect to past and future noneconomic damages. Dr. Boemi cross-appealed, challenging, in part, the denial of his motion for a remitti-tur of the future medical expenses awarded.
 

 For the reasons set forth below, we approve the trial court’s order for a remit-titur of the past and future noneconomic damages awards and affirm the order for a new trial on those damages. On the cross-appeal, we conclude that the evidence presented at the trial is insufficient to support the award of $150,000 in future medical expenses and that the trial court should have entered an appropriate order of re-mittitur with regard to that award. Accordingly, we reverse the award for future medical expenses and remand for further proceedings on that issue. We will address the issue of the award for future medical expenses first and then consider the trial court’s order for the remittitur of past and future noneconomic damages.
 

 II. THE FUTURE MEDICAL EXPENSES AWARD
 

 On his cross-appeal, Dr. Boemi contends that the trial court abused its discretion in permitting Ms. Aills to present evidence of future medical expenses after the defense had rested its case. He also contends that the evidence presented does not support the jury’s award of $150,000 for future medical expenses.
 

 During her ease-in-chief, Ms. Aills presented evidence that she had already undergone thirteen surgical procedures to address the consequences of the initial surgery performed by Dr. Boemi. Ms. Aills also presented evidence that she would require additional surgeries and medical procedures. However, Ms. Aills failed to present any evidence during her ease-in-chief concerning the cost of her future medical treatment. After the defense had rested, Ms. Aills moved to reopen her case to present evidence concerning the amount of her future medical expenses, and over Dr. Boemi’s objection, the trial court permitted Ms. Aills to reopen her case for this purpose.
 

 Although Ms. Aills had rested her case-in-chief, the trial court had broad discretion to allow her to reopen her case to present additional evidence.
 
 See RNK Family Ltd. P’ship v. Alexander-Mitchell
 
 
 *1026
 
 Assocs., 890 So.2d 297, 299 (Fla. 2d DCA 2004) (citing
 
 Amador v. Amador,
 
 796 So.2d 1212, 1213 (Fla. 3d DCA 2001)). Our review of the trial court’s ruling permitting Ms. Aills to reopen her case after resting is for abuse of discretion.
 
 See Hudson Pulp & Paper Corp. v. Futch,
 
 232 So.2d 763, 764 (Fla. 1st DCA 1969);
 
 Thrifty Super Market, Inc. v. Kitchener,
 
 227 So.2d 500, 502 (Fla. 3d DCA 1969). We conclude that Dr. Boemi has failed to demonstrate that the trial court abused its discretion in permitting Ms. Aills to reopen her case to present evidence concerning the amount of her future medical expenses.
 

 The jury awarded Ms. Aills $150,000 for future medical expenses. On appeal, Ms. Aills suggests that the evidence would support an award for her future medical expenses in an amount of at least $120,000. We disagree. Dr. Brueck testified that Ms. Aills would require five additional medical procedures as a direct consequence of Dr. Boemi’s asserted negligence.
 
 [2]
 
 Dr. Brueck estimated the cost of these additional procedures at $10,000 to $15,000 each. Thus the evidence presented established a range of $50,000 to $75,000 for Ms. Aills’ future medical expenses.
 

 This court has recently summarized the law pertaining to the proof of future medical expenses as follows:
 

 In a personal injury action in which the plaintiff seeks damages for future medical expenses, “only medical expenses which are reasonably certain to be incurred in the future are recoverable.”
 
 Loftin v. Wilson,
 
 67 So.2d 185, 188 (Fla.1953). There must be “evidence in the record from which the jury could, with reasonable certainty, determine the amount of medical expense [the plaintiff] would be likely to incur in the future.”
 
 DeAlmeida v. Graham,
 
 524 So.2d 666, 668 (Fla. 4th DCA 1987);
 
 see also Walt Disney World Co. v. Blalock,
 
 640 So.2d 1156, 1159 (Fla. 5th DCA 1994) (“As stated in
 
 Loftin v. Wilson,
 
 67 So.2d 185 (Fla.1953), only medical expenses which are reasonably certain to be incurred in the future are recoverable. There must also be an evidentiary basis upon which the jury can, with reasonable certainty, determine the amount of those expenses.”).
 

 Truelove v. Blount,
 
 954 So.2d 1284, 1287 (Fla. 2d DCA 2007) (alteration in original).
 

 Based on the evidence presented, the medical expenses that Ms. Aills is reasonably certain to incur in the future as a consequence of Dr. Boemi’s asserted negligence will not exceed $75,000. It follows that the trial court abused its discretion in denying Dr. Boemi’s motion for remittitur on the issue of future medical expenses. Accordingly, we reverse the trial court’s order to the extent that it denied the remittitur of damages for future medical expenses and remand for further proceedings on that issue. On remand, the trial court shall enter an order of remittitur reducing the award for future medical expenses to an appropriate amount. If Ms. Aills does not agree to accept the remitti-tur of the award for future medical expense, then the trial court shall order a new trial on the issue of the damage award for future medical expenses.
 
 See
 
 § 768.74(4), Fla. Stat. (2006) (“If the party adversely affected by such remittitur or additur does not agree, the court shall order a new trial in the cause on the issue of damages only.”).
 

 
 *1027
 
 III. THE PAST AND FUTURE NONECONOMIC DAMAGES AWARDS
 

 With regard to the remittitur on the awards of past and future noneconomic damages, Ms. Aills makes two separate arguments. First, she argues that the trial court’s order granting the remittitur of past and future noneconomic damages is insufficient as a matter of law. Second, Ms. Aills contends that the trial court abused its discretion in reducing the award for past noneconomic damages from $4,000,000 to $750,000 and in reducing the award for future noneconomic damages from $4,000,000 to $1,750,000. We reject Ms. Aills’ first argument without discussion and turn to the consideration of her second argument.
 

 The trial court’s consideration of Dr. Boemi’s motion for remittitur was governed by section 768.74. Upon the filing of a proper motion, a trial court has the responsibility to review the amount of an award of money damages to determine if the “amount is excessive or inadequate in light of the facts and circumstances which were presented to the trier of fact.” § 768.74(1). “If the [trial] court finds that the amount awarded is excessive or inadequate, it [is required to] order a remittitur or [an] additur.” § 768.74(2). “If the party adversely affected by [the] remittitur or additur does not agree, the court [must] order a new trial ... on the issue of damages only.” § 768.74(4).
 

 In determining whether an award is excessive or inadequate, the trial court is required to consider the following criteria:
 

 (a) Whether the amount awarded is indicative of prejudice, passion, or corruption on the part of the trier of fact;
 

 (b) Whether it appears that the trier of fact ignored the evidence in reaching a verdict or misconceived the merits of the case relating to the amounts of damages recoverable;
 

 (c) Whether the trier of fact took improper elements of damages into account or arrived at the amount of damages by speculation and conjecture;
 

 (d) Whether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered; and
 

 (e) Whether the amount awarded is supported by the evidence and is such that it could be adduced in a logical manner by reasonable persons.
 

 § 768.74(5). Section 768.74 reflects “the intention of the Legislature that awards of damages [should] be ... close[ly] scrutinized] by the courts and that all such awards be adequate and not excessive.” § 768.74(3).
 

 The appropriate standard of review of a trial court’s order granting a remittitur or an additur is whether there has been a clear showing of abuse of discretion.
 
 See Normius v. Eckerd Corp.,
 
 813 So.2d 985, 988 (Fla. 2d DCA 2002) (citing
 
 Winn-Dixie Stores, Inc. v. Robinson,
 
 472 So.2d 722, 725 (Fla.1985)). In reviewing the trial court’s order for remit-titur, we are mindful of the teaching of our supreme court in
 
 Bould v. Touchette,
 
 349 So.2d 1181, 1184-85 (Fla.1977), as follows:
 

 Where recovery is sought for a personal tort, or where punitive damages are allowed, we cannot apply fixed rules to a given set of facts and say that a verdict is for more than would be allowable under a correct computation. In tort cases damages are to be measured by the jury’s discretion. The court should never declare a verdict excessive merely because it is above the amount which the court itself considers the jury should have allowed. The verdict should not be disturbed unless it is so inordinately large as obviously to exceed the
 
 *1028
 
 maximum limit of a reasonable range within which the jury may properly operate.
 

 This formulation by the
 
 Bould
 
 court “de-scribefs] the maximum limit of a reasonable range of a verdict from the perspective of the jury.”
 
 Hawk v. Seaboard Sys. R.R., Inc.,
 
 547 So.2d 669, 674 (Fla. 2d DCA 1989) (Altenbernd, J., concurring). Stating the matter differently from the perspective of the parties, “[t]he verdict should not be disturbed unless it is so inordinately large as to obviously exceed the maximum monetary risk which the defendant should assume by its decision to litigate rather than settle a claim.”
 
 Id.
 

 The comparison of jury verdicts reached in similar cases provides one method of assessing “[wjhether the amount awarded bears a reasonable relation to the amount of damages proved and the injury suffered.” § 768.74(5)(d). However, because no injury is exactly like another and different individuals may be adversely affected to a greater or lesser degree by similar injuries, such comparisons must be made with caution.
 
 See Loftin v. Wilson,
 
 67 So.2d 185, 189 (Fla. 1953). That said, comparison of verdicts is a recognized method of assessing whether a jury verdict is excessive or inadequate.
 
 See Pendarvis v. Pfeifer,
 
 132 Fla. 724, 182 So. 307, 313 (1938);
 
 Citrus Cnty. v. McQuillin,
 
 840 So.2d 343, 347 (Fla. 5th DCA 2003);
 
 Wash. Cnty. Kennel Club, Inc. v. Edge,
 
 216 So.2d 512, 516 (Fla. 1st DCA 1968).
 

 In closing argument to the jury, Ms. Aills’ counsel suggested that the jury return a verdict for past and future non-economic damages in the range of $12,000,000 to $13,000,000. In response, Dr. Boemi’s attorney told the jury that Ms. Aills’ injuries did not warrant a recovery that high but expressly declined to suggest a lesser amount or range of amounts for the jury’s consideration.
 
 [3]
 
 The jury actually awarded Ms. Aills a total of $8,000,000 for past and future noneconomic damages, less than Ms. Aills requested.
 

 In his posttrial motion for remittitur, Dr. Boemi suggested that an award to Ms. Aills of four to five times her actual medical damages would be appropriate. The use of such a rule of thumb would have resulted in an award for past and future noneconomic damages in the range of $624,000 to $780,000.
 
 [4]
 

 The trial court’s order of remittitur reduced the total noneconomic damages award from $8,000,000 to $2,500,000. The $2,500,000 figure amounted to approximately thirty-one percent of the jury’s award. By any measure, this was a substantial reduction. However, an award of $2,500,000 for noneconomic damages remains a significant amount, and it substantially exceeds the range of amounts suggested by Dr. Boemi in his motion for remittitur.
 

 The parties’ presentations to the trial court on Dr. Boemi’s requested remittitur were extensive. The submissions from the parties consisted not only of legal memo-randa but also information concerning
 
 *1029
 
 many jury verdicts involving plaintiffs who sustained injuries similar to those suffered by Ms. Aills. The verdicts collected by the parties included cases from not only Florida but also other jurisdictions in the United States.
 

 All of the awards in the similar cases were for amounts substantially less than the jury’s $8,000,000 award to Ms. Aills. Although the information concerning the multiple jury verdicts submitted by the parties to the trial court defies summary, the awards in similar cases ranged from $55,000 to amounts in the low seven figures, with most awards in the low-to-mid six figures. The highest verdict in a similar case was a $3,500,000 verdict from a Massachusetts jury in a case that arguably involved injuries even more severe than those sustained by Ms. Aills.
 

 In its order for remittitur, the trial court did not attempt to minimize Ms. Aills’ injuries. On the contrary, the trial court acknowledged that Ms. Aills “suffered and continues to suffer from grievous injuries.” The trial court also recognized that Ms. Aills “experienced significant emotional suffering as a result of her physical injuries.” The trial court declined to employ a mechanical formula of the type suggested by Dr. Boemi in assessing the jury’s award to Ms. Aills. Instead, the trial court appears to have relied heavily on the parties’ submissions concerning jury awards in similar cases. In its order, the trial court specifically referred to two verdicts from Florida juries that were cited by Ms. Aills in her memorandum in opposition to the motion for remittitur. One award from Escambia County was for $1,700,000. The other award was from Duval County and was for $1,750,000. The information concerning these awards, together with the substantial additional information presented by the parties, provided a factual basis upon which the trial court could reasonably conclude that the jury’s $8,000,000 award to Ms. Aills was “so inordinately large as obviously to exceed the maximum limit of a reasonable range within which the jury [could] properly operate.”
 
 Bould,
 
 349 So.2d at 1184-85. Under these circumstances, we conclude that Ms. Aills has failed to make a clear showing that the trial court abused its discretion in ordering a reduction of the award for past and future noneconomic damages to the sum of $2,500,000.
 

 IV. CONCLUSION
 

 For the foregoing reasons, we reverse the trial court’s order to the extent that it denied the motion for remittitur of the future medical expenses award and we remand for further proceedings on that issue. On remand, the trial court shall enter an appropriate order of remittitur of the award for future medical expenses. If Ms. Aills does not accept the remittitur, the trial court shall order a new trial on that issue. We approve the trial court’s order of remittitur as to the past and future noneconomic damages and affirm the trial court’s order of a new trial on damages on those issues.
 

 Affirmed in part, reversed in part, and remanded.
 

 NORTHCUTT, J., and WILLIAMS, CHARLES E., Associate Judge, Concur.
 

 [1]
 

 . The jury rejected Ms. Aills’ claims against Dr. Boemi for negligence in failing to obtain
 
 *1025
 
 informed consent, fraudulent misrepresentation, battery, and punitive damages.
 

 [2]
 

 . Dr. Brueck testified to the necessity for four such procedures after Ms. Aills had reopened her case. During Ms. Aills’ case-in-chief, he had testified to the need for a fifth procedure. We reject Ms. Aills' claim for the costs of replacing her implants every ten years, which is a natural consequence of the procedure to which she consented.
 

 [3]
 

 . "When the defendant does not assist the jury in establishing a range for a verdict, it is more difficult for tire defendant to later suggest that a verdict below the plaintiffs' request is somehow a verdict which exceeds the maximum limit of the reasonable range in which the jury was free to operate.”
 
 Hawk,
 
 547 So.2d at 674 (Altenbernd, J., concurring).
 

 [4]
 

 . The past medical expenses totaled $81,000. The highest figure that the evidence would support for future medical expenses is $75,000. Thus the total for medical expenses is $156,000. Four times $156,000 is $624,000, and five times $156,000 is $780,000.