725 So.2d 1190 (1998)
NATIONAL HEALTHCORP LIMITED PARTNERSHIP, authorized to operate National Healthcare Center of Hudson, Appellant,
v.
John F. CASCIO, Appellee.
No. 97-04275
District Court of Appeal of Florida, Second District.
December 30, 1998.
Rehearing Denied February 12, 1999.
George W. Meros, Jr., and Mary W. Chaisson of Rumberger, Kirk & Caldwell, P.A., Tallahassee; and Richard J. Caldwell and Robert L. Blank of Rumberger, Kirk & Caldwell, P.A., Tampa, co-counsel for Appellant.
James L. Wilkes II and Edward J. Lyons of Wilkes & McHugh, P.A., Tampa, for Appellee.
ALTENBERND, Judge.
The defendant, National Healthcorp Limited Partnership (National Healthcorp), appeals an order granting the plaintiff, John F. Cascio, a new trial. In this case, the trial judge died after the jury returned a verdict for National Healthcorp but before she had *1191 ruled on Mr. Cascio's motion for new trial. In his motion, Mr. Cascio argued, in part, that the verdict was contrary to the manifest weight of the evidence. The successor judge decided that he was obligated to grant a new trial without ruling on the merits of the motion because he had not been in attendance at the trial and could not assess issues involving the credibility of witnesses and possible conflicts in the evidence. The order granting new trial does not reveal any particular issue for which the manifest weight of the evidence was impacted by matters of credibility.
In a criminal context where the state is the prosecutor, the successor judge's ruling might have been correct. See State v. May, 703 So.2d 1097 (Fla. 2d DCA 1997); Sanford v. State, 687 So.2d 315 (Fla. 3d DCA 1997); Kelley v. State, 637 So.2d 972 (Fla. 1st DCA 1994). In a civil context, however, where the state merely provides a forum for dispute resolution, the parties' constitutional right to trial by jury mandates that a jury's verdict should not be so vulnerable to attack. The successor judge should review the record and rule upon the motion to the best of his or her ability. Only in an extraordinary case, after reviewing the entire record and determining that a particular credibility issue exists which prevents the trial court from ruling on the issue of manifest weight, may the successor judge grant the motion without ruling upon its merits. In such a case, the trial judge should enter an order explaining the circumstances that justify the ruling.

I. THE FACTS
On June 25, 1992, a cervical laminectomy was performed on Mr. Cascio at HCA New Port Richey Hospital. At the time of the operation, he was 65 years old, and his treatment may have been complicated by some preexisting health problems. He stayed in the hospital until July 8, 1992. He was then transferred to a nursing home owned by National Healthcorp, where he stayed for a week. During this period, he suffered leakage of cerebrospinal fluid from the surgical wound and developed an infection, which evolved into meningitis. He returned to HCA New Port Richey on July 16, 1992, and was not released until August 8, 1992. Thereafter, he spent a long period recuperating at Tampa General Hospital.[1]
In May 1994, Mr. Cascio and his wife filed a lawsuit in the Thirteenth Judicial Circuit against numerous healthcare providers. The action was transferred to the Sixth Judicial Circuit. In his second amended complaint, Mr. Cascio sued Humana Medical Plan, Inc., Port Richey Medical Care, Inc., several physicians associated with Port Richey Medical Care, Inc., Suncoast Neurosurgical Center, Inc., and Dr. Albert W. Auld, a neurosurgeon. Mr. Cascio also sued National Healthcorp for negligence and for violations of the statutory protections provided to nursing home residents pursuant to section 400.022, Florida Statutes (1991).
Prior to trial, Humana Medical Plan, Inc., was dismissed from the lawsuit. Suncoast Neurosurgical Center, Inc., and Dr. Auld were also voluntarily dismissed with prejudice. Thereafter, Port Richey Medical Care, Inc., and its physicians were dismissed from the action. In addition, Mrs. Cascio was dropped from the lawsuit prior to trial. Ultimately, Mr. Cascio tried his remaining claim against National Heathcorp for nine days in September 1996. Judge Marsha B. Glisson presided at that jury trial. The case focused on Mr. Cascio's claim that National Heathcorp had violated his statutory rights. National Heathcorp raised defenses that included the comparative fault of several defendants who were no longer active parties. See Fabre v. Marin, 623 So.2d 1182 (Fla. 1993).
The statutory rights enumerated in section 400.022 are quite wide-ranging. Mr. Cascio emphasized three main theories. First, he argued that the nursing home staff did not promptly discover his developing infection *1192 and report it to the treating physicians. This theory included an argument that the nursing home had allowed improper use of medication that may have masked the initial infection. Second, Mr. Cascio argued that the staff had not treated him courteously, fairly, and with the fullest measure of dignity because he was left to sit in his own urine, allowed to fall when unsupervised, and his bandages were not changed as needed. Finally, he argued that the nursing home had used an improper medication, Haldol, as a chemical restraint.
It is obvious that the "actual damages" potentially recoverable in this case pursuant to section 400.023, Florida Statutes (1991), are extensive under Mr. Cascio's first theory, but more limited under the second and third theories. In closing argument, both sides spent the great majority of their time discussing whether the nursing home had played a role in allowing Mr. Cascio's post-surgical infection to develop into a life-threatening condition.
The jury instructions did not present these three theories, but rather described five rights. The instructions state:
The issues for your determination on the resident rights claim of John Cascio against defendant National Healthcorp Limited Partnership are, whether National Healthcorp Limited Partnership deprived and/or infringed upon any of the following rights of John Cascio, and if so whether such deprivation or infringement was a legal cause of loss, injury or damage.
A. The right to adequate and appropriate healthcare, protective and support services consistent with the resident care plan, with the established and recognized practice standards within the community, and with the rules promulgated by the department.
B. The right to civil liberties.
C. The right to be adequately informed of his medical condition and proposed treatment, and the right to participate in the planning of all medical treatment.
D. The right to be treated courteously, fairly, and with the fullest measure of dignity.
E. The right to be free from chemical restraints. Chemical restraints are medications such as tranquilizers or sedatives which are used to modify resident behavior.
For better or worse, the jury was given an interrogatory verdict form that did not attempt to isolate the jury's decision on liability for each of these five rights or along the lines of the three major theories discussed above. Instead, the jury was asked: "Was there an infringement or deprivation of John Cascio's nursing home resident's rights by defendant which was a legal cause of loss, injury or damage to John Cascio?" After returning to the courtroom on several occasions, unsuccessfully seeking copies of various physicians' depositions, the jury answered this question "no," and thus did not complete the remainder of the verdict form.[2]
Mr. Cascio timely moved for a new trial. His motion contains several grounds. Included among those grounds are: (1) Plaintiff was prohibited from investigating his case pretrial by an order prohibiting ex-parte communication with former employees of National Healthcorp; (2) Plaintiff was prejudiced by the admission of testimony concerning the fault of non-parties who were not joint and several tortfeasors with National Healthcorp; (3) Defendant's counsel improperly addressed the jurors by their individual names during closing argument; (4) Plaintiff was entitled to a directed verdict concerning the comparative fault of non-parties; (5) Defendant improperly excluded an African-American juror; and (6) the verdict was contrary to the manifest weight of the evidence. As is often the case, the motion itself did not flesh out the argument that the verdict was contrary to the manifest weight of the evidence.
Tragically, Judge Glisson died before she could hear the parties' argument and rule on Mr. Cascio's motion for new trial. Judge W. Lowell Bray, Jr., was then assigned the case. At that point, the parties disputed Judge *1193 Bray's role in the proceedings. Mr. Cascio's memorandum argued that because one of the grounds for the motion was whether the verdict was contrary to the manifest weight of the evidence, the motion necessarily required a determination of witness credibility, which Judge Bray could not make because he had not presided at trial and had not observed the demeanor of the witnesses as they testified. The memorandum does not detail the nature of the manifest weight argument that Mr. Cascio had intended to make to Judge Glisson, and we have no transcript of any hearing at which the parties may have discussed this issue. In September 1997, Judge Bray decided that he could not rule upon the merits of the motion for new trial. Instead, he granted a new trial on the belief that such a remedy was mandated, as a matter of law, by his inability to address the motion for new trial with the same degree of knowledge that Judge Glisson would have possessed. Recognizing the limitations of a successor judge, we conclude that, as a general rule, the successor judge must rule on the merits of such a motion.

II. DISPOSITION OF A MOTION FOR NEW TRIAL BY A SUCCESSOR JUDGE
Although Florida has no rule of procedure comparable to Federal Rule of Civil Procedure 63,[3] it is well-established that a successor judge may rule upon a motion for new trial. See Wolkowsky v. Goodkind, 153 Fla. 267, 14 So.2d 398 (1943); Wohlfiel v. Morris, 122 So.2d 235 (Fla. 2d DCA 1960); General Hosp. of Greater Miami, Inc. v. Gager, 160 So.2d 749 (Fla. 3d DCA 1964); Otis Elevator Co. v. Gerstein, 612 So.2d 659 (Fla.App.1993). Such a ruling is not entitled to the same deference on appeal as the ruling of a presiding judge. See Wolkowsky, 153 Fla. 267, 14 So.2d 398; Wohlfiel, 122 So.2d 235.
Mr. Cascio argues that a successor judge may rule on pure issues of law, including sufficiency of the evidence, but that a successor judge cannot rule on the weight of the evidence. To the extent that Mr. Cascio relies on Wohlfiel for the proposition that a trial judge can only rule on whether the "evidence is insufficient," we conclude that he reads the opinion too narrowly.
We agree that a successor judge's job in assessing a motion for new trial on the issue of manifest weight of the evidence is not easy. On the other hand, appellate courts regularly assess this issue and occasionally grant a new trial based exclusively upon the cold appellate record. See, e.g., Morera v. Castellon, 716 So.2d 318 (Fla. 3d DCA 1998); Ramey v. Winn Dixie Montgomery, Inc., 710 So.2d 191 (Fla. 1st DCA 1998); Sparks-Book v. Sports Auth., Inc., 699 So.2d 767 (Fla. 3d DCA 1997); Pierce v. Nicholson Supply Co., 676 So.2d 70 (Fla. 2d DCA 1996); Shadow Lakes, Inc. v. Cudlipp Constr. & Dev. Co., 658 So.2d 116 (Fla. 2d DCA 1995); Salman v. Cooper, 633 So.2d 570 (Fla. 4th DCA 1994); McCloud v. Sherman Mobile Concrete Co., 579 So.2d 773 (Fla. 2d DCA 1991); Williams v. Bankers Multiple Line Ins. Co., 567 So.2d 559 (Fla. 4th DCA 1990). Thus, we have first-hand experience with the process of granting or denying new trials on the issue of manifest weight of the evidence as successor judges.[4]
We hold that Judge Bray erred when he declined to consider the motion for new trial on the merits. On remand, the successor judge must familiarize himself with the record, including the exhibits, and consider the arguments of counsel. We caution that this holding does not rule out the possibility that the successor judge may still grant a new trial on the ground that he cannot fairly rule upon the specific motion for new *1194 trial in light of particular credibility issues in the record. See generally Rose Hall, Ltd. v. Chase Manhattan Overseas Banking Corp., 576 F.Supp. 107 (D.Del.1983) (discussing successor judge's role on motion for new trial under Federal Rule 63). Typically, a jury's verdict is not against the manifest weight of the evidence if the record reflects conflicting testimony from two or more witnesses. See Fitzgerald v. Molle-Teeters, 520 So.2d 645, 648 (Fla. 2d DCA 1988). Thus, the type of credibility issue that might mandate a new trial, as a matter of law, would normally occur only when the first judge could have granted a new trial because of a witness's demeanor while testifying or perhaps due to the impeachment of a witness. We are inclined to believe that such occurrences should be rare. See generally Moore's Federal Practice § 63.05(6)(a) (3d ed.1998).
An order granting a new trial must specify the grounds for new trial. See Fla. R. Civ. P. 1.530(f). In any motion granting new trial on the ground that a successor judge cannot fairly rule on the issue, the successor judge should clearly identify the problem in the record that precludes him or her from ruling on the motion and the reason this justifies overturning the jury's verdict.
We also emphasize that on remand the trial judge in this case is free to grant a new trial on the merits of any of the issues presented in Mr. Cascio's motion. For example, Judge Glisson's ruling on pretrial discovery relied upon a decision from this court that was disapproved in H.B.A. Management, Inc. v. Schwartz, 693 So.2d 541 (Fla.1997). We have considered whether we could expedite this case by ruling at this time upon any of the purely legal issues identified in the motion. We conclude that due process would be better served if the successor trial judge rules on these issues, and this court performs only its usual review function.
Reversed and remanded for further proceedings consistent with this opinion.
CAMPBELL, A.C.J., and SALCINES, J., Concur.
NOTES
[1] Our review in this case has been hampered by the total omission of trial exhibits, including all medical records, from the appellate record. In light of our holding, those exhibits are not crucial to our work at this time. Obviously, the exhibits will be important to the trial judge on remand and would be important in any further appellate review of that judge's decision on the motion for new trial.
[2] Oddly, the actual verdict form is not a part of the record. We rely on the verdict as published in the transcript.
[3] Federal Rule of Civil Procedure 63 states: "If a trial or hearing has been commenced and the judge is unable to proceed, any other judge may proceed with it upon certifying familiarity with the record and determining that the proceedings in the case may be completed without prejudice to the parties. In a hearing or trial without a jury, the successor judge shall at the request of a party recall any witness whose testimony is material and disputed and who is available to testify again without undue burden. The successor judge may also recall any other witness."
[4] A successor judge's role in evaluating a verdict concerning the manifest weight of the evidence presented to the jury is different than his or her role in making an initial determination as a trier of fact based on evidence presented to an earlier judge. See Bradford v. Foundation & Marine Constr. Co., 182 So.2d 447 (Fla. 2d DCA 1966).