ON REMAND FROM THE SUPREME COURT OF FLORIDA
 

 MORRIS, Judge.
 

 In
 
 Kanarek v. Sullivan,
 
 64 So.3d 1227, 1228 (Fla.2011), the Florida Supreme Court quashed our decision in
 
 Sullivan v. Kanarek,
 
 34 So.3d 808 (Fla. 2d DCA 2010), and remanded for reconsideration in light of the Florida Supreme Court’s decision in
 
 Companioni v. City of Tampa,
 
 51 So.3d 452, 453 (Fla.2010). On remand, we have reconsidered the case and have concluded that a new trial is required for the reasons expressed below.
 

 I. Background
 

 As set forth in our prior opinion,
 
 Sullivan,
 
 34 So.3d 808, this case involves a medical malpractice claim by a deceased child’s estate (the Estate) against the doctor who treated him before his death. After the jury returned a verdict in favor of the defense, the Estate filed a motion for new trial based on improper conduct by the defense counsel, some of which was apparent from the record and some of which was not reflected in the record. We concluded that it was an extraordinary case in which a successor judge should grant a new trial on the ground that he cannot fairly rule upon the specific motion for new trial in light of particular credibility issues, relying on
 
 National Healthcorp Ltd. Partnership v. Cascio,
 
 725 So.2d 1190, 1193-94 (Fla. 2d DCA 1998).
 

 In reaching the ground for reversal in
 
 Sullivan,
 
 we treated the issue as properly
 
 *903
 
 preserved, relying on this court’s decision in
 
 City of Tampa v. Companioni,
 
 26 So.3d 598, 599 (Fla. 2d DCA 2009), which has since been quashed by the supreme court.
 
 See Companioni,
 
 51 So.3d 452. In its
 
 Companioni
 
 decision, the supreme court held that “when a party objects to instances of attorney misconduct during trial, and the objection is sustained, the party must also timely move for a mistrial in order to preserve the issue for a trial court’s review of a motion for new trial.”
 
 Id.
 
 at 456. “If the issue is not preserved in this manner, then the conduct is subject to fundamental error analysis under”
 
 Murphy v. International Robotic Systems, Inc.,
 
 766 So.2d 1010 (Fla.2000).
 
 Companioni,
 
 51 So.3d at 456. Thereafter, the Florida Supreme Court quashed our
 
 Sullivan
 
 decision and remanded it to this court “for reconsideration in light of this Court’s decision in
 
 Companioni.” Kanarek,
 
 64 So.3d at 1228.
 

 II. Analysis of the case on remand
 

 Because the Estate did not move for a mistrial during the course of the trial, we must consider the fundamental error analysis in
 
 Murphy.
 
 Under
 
 Murphy,
 
 the party moving for a new trial “must first establish that the argument being challenged is, in fact, improper.” 766 So.2d at 1028. The party must then establish that the argument is harmful, which requires that “the comments be so highly prejudicial and of such collective impact as to gravely impair a fair consideration and determination of the case by the jury.”
 
 Id.
 
 at 1029. “In sum, the improper closing argument comments must be of such a nature that [they] reach[ ] into the validity of the trial itself to the extent that the verdict reached could not have been obtained but for such comments.”
 
 Id.
 
 at 1030. Third, the improper comment must be incurable, meaning that the sustaining of a timely objection and a curative instruction “could not have eliminated the probability that the unobjected-to argument resulted in an improper verdict.”
 
 Id.
 
 Last, the party must “establish that the argument so damaged the fairness of the trial that the public’s interest in our system of justice requires a new trial.”
 
 Id.
 
 The court recognized that this “category necessarily must be narrow in scope,” citing, for example, “appeals to racial, ethnic, or religious prejudices.”
 
 Id.
 

 Once a party has demonstrated all four requirements, that party is entitled to a new trial on the basis that the errors amount to fundamental error.
 
 Id.
 
 On appeal of the trial court’s decision to grant or deny a new trial,
 

 the appellate court must then apply an abuse of discretion standard in reviewing either the trial court’s grant or denial of a new trial ... because applying such standard sufficiently recognizes that the trial judge is in the best position to determine the propriety and potential impact of allegedly improper closing argument.
 

 Id.
 
 at 1030-31 (footnote omitted) (citation omitted).
 

 We first address the abuse of discretion standard discussed in
 
 Murphy. Murphy’s
 
 holding that an abuse of discretion standard should be applied to the trial court’s ruling on the motion for new trial is based on the presumption that the trial judge ruling on the motion for new trial was the one who presided over the case and is therefore in the best position to determine the propriety and potential impact of the conduct. But the presiding judge in this case was not able to rule on the motion for new trial, and as this court pointed out in
 
 Sullivan,
 
 the successor judge in this ease was not in as good of a position to assess the issue as the judge who presided over the case.
 
 See Wolkowsky v. Goodkind,
 
 153 Fla. 267, 14 So.2d
 
 *904
 
 398, 402 (1943) (en banc) (“[W]hen a judge who did not try the case acts upon a motion for new trial, he has to rely upon the written record, just as much so as the appellate court which later has his ruling under review, and the latter court, with the same record before it, is in just as good a position to determine the question of the weight and legal effect of the evidence and its sufficiency to sustain the verdict as was the judge of the lower court who granted or denied the motion.”);
 
 Cascio, 725
 
 So.2d at 1193 (holding that a successor judge’s ruling on a motion for new trial “is not entitled to the same deference on appeal as the ruling of a presiding judge”). Therefore, we do not afford the successor judge the same deference we would afford if he had presided over the trial.
 

 In analyzing whether a new trial is warranted under the standard announced in
 
 Murphy,
 
 we conclude that the instances of alleged misconduct apparent from the record do not by themselves or together amount to fundamental error. However, the instances of misconduct reflected in the record must be considered in light of the fact that certain misconduct or behavior of defense counsel was not reflected in the record but was noted by the presiding trial judge. As noted in our prior opinion, “[t]he trial transcript reflects a highly contentious and raucous five-day jury trial, fraught with objections and bench conferences.”
 
 Sullivan,
 
 34 So.3d at 810. Defense counsel made several attempts to engage in questioning that was improper for various reasons, causing the Estate to object. While most of these objections were sustained, the behavior often brought the trial to a halt and demonstrated to the jury a contentious atmosphere. One example was when the defense repeatedly violated a pretrial order in limine that prevented the defense from questioning witnesses outside the scope of direct examination. This order in limine was intended to avoid the Estate’s having to constantly object in front of the jury. The trial judge commented that the scope of direct was very narrow and that the jury and the court were tired of this behavior.
 

 The record also indicates that on at least two separate occasions, the trial court sustained objections by the Estate and restricted the defense’s questioning of the witness. The defense immediately attempted to ask the witness similar questions, causing the Estate to again object and obtain sustaining rulings by the trial court.
 

 The Estate points to other instances of alleged misconduct which we conclude do not constitute misconduct. But as noted above, we do believe that the record shows some misconduct on the part of defense counsel. When considered together, they cause us concern. At the least, defense counsel’s conduct required the Estate’s counsel to repeatedly object to inappropriate questioning by defense counsel throughout the trial, sometimes in response to questions which were asked in violation of a pretrial ruling or a ruling that had just been made by the trial court. Many of the objections were sustained, and defense counsel would often cause the Estate to object again on the same basis. The Estate’s numerous objections should not have been necessary and caused the Estate to risk “alienating the jury” or causing “the jury to infer that one side of the case is trying to hide or disguise matters that would be useful to the jury.”
 
 Bocher v. Glass,
 
 874 So.2d 701, 704 (Fla. 1st DCA 2004) (holding that cumulative effect of plaintiffs comments deprived defendants of a fair trial and warranted the granting of a new trial under
 
 Murphy).
 

 Had defense counsel’s behavior only consisted of the above instances, we could
 
 *905
 
 not say that a new trial would be required under
 
 Murphy.
 
 But we are faced with, and must consider, the fact that the presiding judge made strong comments on the record indicating that defense counsel’s behavior consisted of much more than that reflected in the record. As with a case involving particular credibility issues that may not be apparent from the record,
 
 see Cascio,
 
 725 So.2d at 1193-94, we certainly recognize that misconduct of a party or litigant may likewise not be apparent from the record.
 

 In our prior opinion, we pointed out that on two occasions, the presiding trial judge cleared the courtroom to manage the conduct of the attorneys.
 
 Sullivan,
 
 34 So.3d at 810. After the Estate filed its motion for new trial, the presiding judge held a hearing at which she stated that she had serious concerns about the fairness of the trial.
 

 The trial was extraordinary in that I cleared the courtroom twice. Come February of next year, I will have been on the bench 20 years.... I[ ] have been a member of the bar since June[ ] 1976. Even as a prosecutor, even in conversations with my colleagues, I can’t think of running into a scenario where because of the conduct, not of the litigants, not of the litigants, but the conduct of counsel — and to be clear, it was Mr. Jose-pher’s conduct, that ha[s] risen to the level of causing me grave concern as to the fairness of this trial....
 

 Again, this trial was extraordinary, not because it was a medical mal, not because unfortunately, it was a baby that died. It was extraordinary because of the amount of time that was dedicated to managing the defense’s behavior....
 

 Id.
 
 at 810-11 (alterations in original). She further stated that what happened during the course of the trial could not be gleaned from the cold record in this case.
 
 Id.
 
 at 811. She took the motion for new trial under advisement before making her ruling, specifically stating that she would review the law on fundamental error. The defense then filed a successful motion to disqualify her, alleging that her comments created a well-founded fear that the defense would not receive a fair hearing.
 
 Id.
 

 The presiding trial judge was in the best position to judge whether defense counsel’s conduct amounted to fundamental error, yet once the presiding judge stated that defense counsel’s conduct concerned her, defense counsel employed a strategy of recusal which took the decision away from her. If she had been permitted to rule on the motion for new trial, her ruling would have been entitled to great deference.
 
 See Murphy,
 
 766 So.2d at 1030-31. In fact, if she had granted a new trial, her decision would have been entitled to even greater deference than if she had denied the motion for new trial.
 
 See Manhardt v. Tamton,
 
 832 So.2d 129, 131 (Fla. 2d DCA 2002) (“The showing necessary to overturn the denial of a motion for new trial is not as great as that necessary to overturn an order granting such a motion.” (citing
 
 Castlewood Int'l Corp. v. LaFleur,
 
 322 So.2d 520, 522 (Fla.1975))). In other words, if she had granted a new trial, the defense would have had a more difficult time showing that she abused her discretion.
 
 See id.
 

 We are not in a position to judge whether the nonrecord behavior would have justified the presiding judge’s granting or denying of the motion for new trial, but we should give great deference or weight to the presiding judge’s comments that defense counsel’s conduct caused her grave concern that the trial was unfair and that the extent and effect of the behavior could not be gleaned from the cold record in the case. The trial judge’s concern regarding the nonrecord behavior, combined with this court’s reading of the record behavior,
 
 *906
 
 leads us to conclude that the trial judge would have been justified in ruling that fundamental error occurred requiring the granting of a new trial.
 

 Defense counsel’s conduct was improper as indicated by the record and the presiding judge’s comments on the record. But it must also be harmful. Defense counsel’s conduct can be said to have “gravely impair[ed] a fair consideration and determination of the case by the jury,”
 
 Murphy,
 
 766 So.2d at 1029, and the portions of the conduct that were reflected in the record were extensive and not isolated. But it also must satisfy the test of being “of such a nature that it reaches into the validity of the trial itself to the extent that the verdict reached could not have been obtained but for such” behavior.
 
 Id.
 
 at 1030. We can conclude that the conduct must have had some type of influence on the jury, based at least on the record’s reflection of the time that the presiding judge spent controlling the behavior of the attorneys, specifically defense counsel, and based on the trial judge’s comments.
 

 Also, the extent of defense counsel’s improper conduct was incurable. Defense counsel’s conduct that is reflected in the record shows that the trial judge continuously attempted to manage defense counsel’s conduct. This quantum of improper behavior combined with the trial judge’s inability to manage it caused the presiding judge to articulate her grave concern that she was unable to entirely destroy its influence.
 
 See id.
 
 Last, as indicated by the trial judge’s observations regarding defense counsel’s behavior and our reading of the record, the behavior of counsel affected the basic fairness, integrity, and public reputation of the judicial process such that a new trial is required.
 
 See id.
 
 The behavior of defense counsel took the focus away from the actual adjudication of the legitimate issue at hand— whether the defendants’ negligence led to the death of a twenty-month old child— and placed the focus on the courtroom behavior of the attorneys.
 

 The defense argues “that a trial judge’s stated observation cannot provide grounds for a new trial in the face of a contrary record.” But here, the record is not contrary to the trial judge’s observations; rather, the nature of the behavior observed by the trial judge is not completely reflected in the record and the record before this court lends credibility to the trial judge’s comments regarding the egregiousness of the totality of defense counsel’s conduct.
 

 Based on our reading of the record, we conclude that the presiding judge would have been justified in granting a new trial. She was unable to do so because of the defense’s strategy of disqualifying her. We cannot condone the practice of counsel engaging in overly zealous representation amounting to misconduct and then reaping the benefit of recusing the judge who was in the best position possible to assess the effect of that misconduct on the fairness of the trial.
 

 Accordingly, we reverse the successor judge’s denial of the motion for new trial and remand for a new trial. This is consistent with our original holding that the successor judge was not in a position to fairly rule on the merits of the motion for new trial due to considerations that were not witnessed by him firsthand. Our conclusion does not change with the application of the fundamental error test in
 
 Murphy.
 

 Reversed and remanded.
 

 DAVIS and KELLY, JJ., Concur.