692 So.2d 947 (1997)
Lawrence ROBBINS, M.D., Appellant,
v.
Cheryl NEWHALL, Appellee.
No. 95-115.
District Court of Appeal of Florida, Third District.
April 16, 1997.
Rehearing Denied May 21, 1997.
*948 Stephens, Lynn, Klein & McNicholas, P.A. and Philip D. Parrish, Miami, for appellant.
Arnold R. Ginsberg, P.A. and Robert Spector, Ft. Lauderdale, for appellee.
Before NESBITT and COPE, JJ., and BARKDULL, Senior Judge.
COPE, Judge.
Defendant-appellant Lawrence Robbins, M.D. appeals an adverse final judgment in a medical malpractice action. We reverse.
In 1991 Plaintiff-appellee Cheryl Newhall sustained a facial injury which fractured her nose and left it deviated to one side. The treating physician referred Newhall to Dr. Robbins for surgery. The purpose was to straighten the nose and make a cosmetic improvement. After an initial consultation, nasal reconstructive surgery was performed by Dr. Robbins and Newhall was discharged from the hospital. Following her discharge, Newhall experienced episodes of bleeding. She was eventually readmitted to the hospital where further surgical procedures stopped the bleeding. Subsequently an additional procedure was needed to treat an infection which developed. Another procedure was later performed to remove scar tissue which had built up as a result of the previous surgeries.
Newhall filed this medical malpractice action in which she alleged that Dr. Robbins was negligent as follows:
a) he used an improper surgical technique so as to cause CHERYL NEWHALL to suffer persistent bleeding and require further surgeries.
b) he failed to properly monitor CHERYL NEWHALL's treatment subsequent to the nasal reconstructive surgery.
c) he failed to properly inform Plaintiff of the risks and complications which could result from such nasal reconstructive surgery
She alleged that, as a result, she was required to undergo additional surgery to repair the damage, and that she suffered nasal collapse with chronic sinusitis.
The physicians who testified during discovery opined that Dr. Robbins had not caused the excessive bleeding and none of them could point to a cause for the bleeding. At deposition, Newhall's expert receded from his pre-suit opinion that Dr. Robbins had been negligent, and Newhall withdrew the expert.
In October 1994, shortly before trial, Dr. Stephen Perkins of Indianapolis, Indiana, performed further surgery on Newhall's nose. After the surgery, Newhall offered Dr. Perkins as a witness on her behalf.
On October 19, 1994, plaintiff took a videotape deposition of Dr. Perkins for use at trial. Like the other physicians, Dr. Perkins concluded that Dr. Robbins was not responsible for plaintiff's postoperative bleeding or the subsequent corrective surgery. Dr. Perkins did not support plaintiff's claims of negligence in follow-up care or informed consent.
Dr. Perkins opined, however, that Dr. Robbins had removed too much cartilage from the alar ridge, and thereby caused plaintiff's *949 nasal collapse. He explained that the amount of cartilage removed could not be ascertained by any external examination of the nose. He stated that during the 1994 surgery he was able to view the alar cartilage and from that, concluded that an excessive amount of cartilage had been removed. He also said that the condition of Newhall's alar cartilage was altered by his own surgery. The issue of excessive cartilage removal had never arisen in any previous proceedings or depositions in the case.
Newhall did not thereafter amend her pleadings and the matter proceeded to trial. At the start of trial on November 28, 1994, Dr. Robbins objected that Dr. Perkins' theory of excessive alar cartilage removal was outside the pleadings. He moved to exclude all evidence as to Dr. Perkins' new theory of negligence. Newhall argued that the type of negligence alleged was subsumed within the general allegations of the complaint. The trial court denied the motion.
During trial Newhall sought to prove the three specific types of negligence originally pled, plus Dr. Perkins' theory of excess alar cartilage removal. Dr. Robbins' motion for directed verdict was denied. By interrogatory verdict the jury found for plaintiff on all four theories of negligence. Dr. Robbins has appealed.
We first address the three specific claims of negligence raised in Newhall's complaint. Newhall alleged that Dr. Robbins was negligent because "he used an improper surgical technique so as to cause CHERYL NEWHALL to suffer persistent bleeding and require further surgeries"; that "he failed to properly monitor CHERYL NEWHALL's treatment subsequent to the nasal reconstructive surgery"; and that "he failed to properly inform Plaintiff of the risks and complications which could result from such nasal reconstructive surgery." At trial there was no expert testimony to establish the proper standard of care or to show that the defendant deviated from the standard of care. See Public Health Trust of Dade County v. Valcin, 507 So.2d 596 (Fla.1987)(informed consent); Sims v. Helms, 345 So.2d 721, 723 (Fla.1977)(surgery). The medical testimony, including that of Dr. Perkins, supported the proposition that defendant had not been negligent on any of the three specifically pled theories of negligence. The motion for directed verdict should have been granted as to those claims.
The remaining claim submitted to the jury was (as stated in the verdict form) that Dr. Robbins had been "negligent in his surgical technique by removing too much bone and cartilage from Cheryl Newhall's nose at the time of the surgery on October 22, 1991...." This specific claim was not pled in the plaintiff's complaint. Dr. Robbins objected to proceeding to trial on this issue because it was outside the pleadings. The trial court overruled the objection, reasoning that this claim was subsumed within the general malpractice allegations of the complaint.
We are obliged to reverse under the controlling and indistinguishable authority of Arky, Freed, Stearns, Watson, Greer, Weaver & Harris v. Bowmar Instrument Corp., 537 So.2d 561 (Fla.1988). In Arky, Freed a law firm had sued its client for nonpayment of fees and the client counterclaimed for legal malpractice, alleging general negligence. In the counterclaim the client alleged several ways in which it contended that the law firm had been negligent. See Arky, Freed, Stearns, Watson, Greer, Weaver & Harris v. Bowmar Instrument Corp., 527 So.2d 211, 212 (Fla. 3d DCA 1987), quashed in part, 537 So.2d 561, 563 (Fla. 1988). Shortly before trial the client advanced an unpled theory of negligence.[*] The trial court ruled that the client's unpled claim was embraced within the general negligence allegation of the counterclaim. 537 So.2d at 562, 563, 527 So.2d at 212. In reversing the ensuing verdict for the client, this court and the Florida Supreme Court both found that the general allegations were not sufficiently specific to permit the law firm to prepare a defense to the new claim. 537 So.2d at 563, 527 So.2d at 213.
Given that the Arky, Freed case had gone to the jury on the unpled, objected-to claim, *950 the question was what remedy should be applied. The Florida Supreme Court said:
In this case, Bowmar did not prove the allegations of the counterclaim, but rather proved a claim not pled with sufficient particularity for Arky, Freed to prepare a defense. Under our law, Bowmar is thus precluded from recovery on this essentially unpled claim.
Bowmar argues, however, that the Third District correctly distinguished this precedent. It bases this contention on the trial judge's error in finding that the specific allegations made by Bowmar were encompassed in the original counterclaim, thus rendering an amendment unnecessary. Bowmar argues that "reliance" on this error distinguishes this case and warrants a remand to permit the appropriate amendment to the pleadings.
We cannot agree. Had Arky, Freed waited to object until the presentation of evidence and then moved for a directed verdict, Bowmar would not have been entitled to amend its pleadings and start the case anew. We cannot see the difference between objecting to the introduction of the evidence pertaining to an unpled claim at trial or by a motion in limine immediately prior to the trial. The effect is the samecalling the court's attention to the fact that an unpled claim is not being tried by consent, since consent would permit Bowmar to amend its pleadings to conform to the proof.
537 So.2d at 563 (emphasis in original). The court ruled that a verdict must be directed in favor of Arky, Freed.
The facts of the present case are indistinguishable. Newhall pled three separate specific acts of negligence: improper surgical technique which caused bleeding and additional surgery; improper follow-up care; and failure to obtain informed consent. The claim of excess alar cartilage removal is not subsumed within those enumerated acts. As was true in Arky, Freed, Newhall prevailed at trial on an unpled claim, over Dr. Robbins' timely objection. There must be a directed verdict for Dr. Robbins on this claim. See Arky, Freed, 537 So.2d at 563.
For the reasons stated, the final judgment is reversed and the cause remanded for entry of judgment in favor of Dr. Robbins.
Reversed and remanded.
NOTES
[*] The client contended that in the underlying litigation Arky, Freed should have raised a "cover" defense. 527 So.2d at 212; see 537 So.2d at 562.