763 So.2d 454 (2000)
Manuel TRIANA and Cecilia Triana and Edelmiro Espinoza, Appellants,
v.
FI-SHOCK, INC., a foreign corporation and Builders Square, Inc., a foreign corporation, Appellees.
Nos. 3D99-433, 3D99-699, 3D99-899.
District Court of Appeal of Florida, Third District.
June 14, 2000.
Rehearing Denied August 9, 2000.
*455 James C. Kelley; Montero, Finizio, Velasquez, Weissing & Reyes, P.A. (Ft.Lauderdale); Podhurst, Orseck, Josefsberg, Eaton, Meadow, Olin & Perwin, P.A., and Joel S. Perwin, for appellants.
Adorno & Zeder, P.A., and Raoul G. Cantero, III, and Gregory A. Victor, Miami, and Nicole E. Mestre, for appellees.
Before GODERICH, GREEN, and SORONDO, JJ.
PER CURIAM.
This is an appeal from a final judgment following a jury trial in a products liability case. The plaintiff, Edelmiro Espinoza ("Espinoza"), alleged that he was shocked by an electric pet deterrent device ("the device") while he was installing cable at the home of the defendants, Manuel and Cecilia Triana. Espinoza sued the Trianas, and later added the device's manufacturer, Fi-Shock, Inc. ("Fi-Shock"), as a party defendant. The jury found the Trianas to be one-hundred percent (100%) liable for Espinoza's injuries, and also found no liability on the part of Fi-Shock. Both Espinoza and the Trianas appeal claiming that the trial court abused its discretion in declining to give a jury instruction and special interrogatory, requested by Espinoza, on whether Fi-Shock had a duty to Espinoza, an unknown third party, to warn the Trianas of the device's supposed dangers. Because Espinoza failed to plead that Fi-Shock owed him a duty to warn the Trianas, and because we find that this issue was not tried by the implied consent of the parties, we affirm.[1]
A day or two before the accident, the Trianas hired Espinoza to reinstall cable television in their family home. Espinoza spoke with Mr. Triana about the job and inspected the premises. At that time, there was no pet deterrent device installed in the Trianas' home. Shortly thereafter the Trianas purchased a Fido-Shock pet deterrent device, which delivers an electrical signal intended to mildly shock small animals, presumably for training purposes, in order to stop their dog from tearing the *456 screen door of the patio enclosure. This screen door was located a few feet from a swimming pool.
Mr. Triana installed the device across the bottom of the patio screen door, with wire running to the transformer, and then out through a metal rod on the patio floor, positioning the wire approximately a foot above the ground. Any person, entering through the patio door, would have to step over the activated wire to avoid being shocked. Triana activated the device before Espinoza came to install the cable. Triana did not tell Espinoza that he had installed and activated the device, or that there was an electrified wire strung across the patio door. Moreover, Triana did not post any type of sign warning about the device or wire, even though such sign could be ordered from Fi-Shock for one dollar ($1.00).
Espinoza came to the Trianas' house, where he dug approximately a one-hundred (100) foot trench, in which the cable would be placed. After digging the trench for several hours, Espinoza went to speak to Mr. Triana, who he thought was on the patio. Upon opening the handle of the patio screen door, Espinoza started to walk through the doorway, when his bare shin came into contact with the energized wire that was strung across the doorway. Espinoza's bare feet, shins and wet hands produced resistance to the flow of electricity, causing a surge of current through his body, which threw him to the ground. Espinoza managed to get up, and go into the Trianas' garage, where he was later found by Mr. Triana lying on his back moaning and shaking. Thereafter, this lawsuit ensued.
Espinoza's suit was originally filed only against the Trianas as the owner of the property on which he was injured. The Trianas then filed a third-party complaint against Fi-Shock for contribution and indemnification.[2] Thereafter, Espinoza filed an amended complaint adding Fi-Shock as a defendant, alleging that Fi-Shock was negligent in the design, manufacture and distribution of the device. Neither of Espinoza's complaints directly or implicitly alleged that Fi-Shock had failed to provide the Trianas with adequate warnings.
Fi-Shock moved for summary judgment against Espinoza on two occasions. The first motion for summary judgment was denied. A week before trial, Espinoza conceded in his response to Fi-Shock's second motion for summary judgment, that there was no evidence to support his claim for negligent manufacture, and that there was "limited evidence" to support his claim for negligent design. However, Espinoza argued for the first time, that Fi-Shock breached a duty to him by failing to adequately warn the Trianas that the device could injure some people.
The trial court bifurcated the trial into liability and damages phases. During the trial on liability, over Fi-Shock's objection, Espinoza's expert was permitted to testify about the adequacy of the warnings contained in the device's instruction manual.[3] This expert testified that Fi-Shock's instructions were insufficient because there were no warnings on the box or in the instruction manual describing the risk of shock, or advising that the electricity produced by the device could possibly injure people.[4] Espinoza's expert did admit, however, that the device itself was not defective either in design or manufacture. *457 Thus, following Espinoza's expert's testimony, the sole issue regarding Fi-Shock's liability to Espinoza became, over objection, whether Fi-Shock's instruction manual contained adequate warnings.[5]
Conversely, Fi-Shock's expert testified that the device was safe. In fact, prior to this incident, Fi-Shock had never received notice that any person, or small animal, had ever been injured by the device. The expert also testified that the device was approved by Underwriters Laboratories ("UL"), an independent product testing organization, and deemed safe. Both the device, and the warnings in the instruction manual, complied with UL's standards. Fi-Shock's expert testified that if Espinoza was injured by the device, it was not due to a lack of warnings. Rather, the expert testified that contrary to Fi-Shock's specific instructions, Espinoza's injury occurred because Triana had installed the device on his patio.[6]
At the close of Espinoza's case, Fi-Shock moved for a directed verdict on grounds, among others, that Espinoza had never pled a claim against Fi-Shock for inadequate warnings, and since that was the sole basis of Espinoza's claim against Fi-Shock, that it was entitled to a directed verdict. The trial court reserved ruling on the motion. After the close of all the evidence, Fi-Shock again moved for a directed verdict, on the same grounds, which the trial judge again reserved ruling on, noting that the jury verdict might render a ruling moot.
During the charge conference, Espinoza requested a special jury instruction, purportedly based on Hayes v. Spartan Chemical Company, 622 So.2d 1352 (Fla. 2d DCA 1993), that a manufacturer has a duty to third parties, to adequately warn homeowners of the dangers of a product so that the homeowners can protect third parties who come onto their property. Espinoza also requested that the following special interrogatory be placed on the verdict form: "Did Defendant, Fi-Shock, Inc., have a duty to warn Defendants, Triana, that [the device] could be dangerous to people?" Fi-Shock again objected, claiming that both the instruction and interrogatory were inappropriate in this case. The trial court agreed, and declined to give the instruction or the interrogatory. The Trianas never objected to the trial court's failure to give the instruction and/or interrogatory.
The jury found that the device caused Espinoza's accident; that the Trianas had a duty to warn Espinoza that the device had been installed on their property; that the Trianas failed to warn Espinoza; that the Trianas' failure to warn Espinoza was the legal cause of the accident; and that Fi-Shock had prior notice that the device could be dangerous to people. The jury found in favor of Espinoza and against the Trianas. The jury also found that Fi-Shock owed no duty to Espinoza. This appeal followed.
On this appeal, both Espinoza and the Trianas claim that the trial court's refusal to give Espinoza's requested jury instruction and interrogatory, regarding whether Fi-Shock owed a duty to Espinoza to warn the Trianas of the dangers of the device, constituted reversible error.[7] We disagree.
The decision on whether to give a particular jury instruction, or include a special interrogatory on a verdict form, is within the trial court's discretion, and absent *458 "prejudicial error," such decisions should not be disturbed on appeal.[8]See Goldschmidt v. Holman, 571 So.2d 422, 425 (Fla.1990)(stating that "[d]ecisions regarding jury instructions are within the sound discretion of the trial court and should not be disturbed on appeal absent prejudicial error."). See also Kranis v. Zahler, 505 So.2d 14 (Fla. 3d DCA 1987)(reversible error analysis used by appellate court to analyze trial court's use of special interrogatory verdict); D'La Rosa v. Rodriguez, 460 So.2d 567 (Fla. 3d DCA 1984)(same).
Because Espinoza failed to plead the issue of adequate warnings, we find that the trial court acted fully within its discretion in denying an interrogatory or jury instruction concerning Fi-Shock's failure to adequately warn. The law is clear that
litigants at the outset of a suit must be compelled to state their pleadings with sufficient particularity for a defense to be prepared. Our growing, complex society and diminishing resources mandate the requirement that litigants present all claims to the extent possible, at one time and one time only.
Arky, Freed, Stearns, Watson, Greer, Weaver, & Harris, P.A. v. Bowmar Instrument Corp., 537 So.2d 561, 563 (Fla. 1988). See also Bloom v. Dorta-Duque, 743 So.2d 1202, 1203 (Fla. 3d DCA 1999)(stating that "[i]t is well settled that a defendant cannot be found liable under a theory that was not specifically pled."); Robbins v. Newhall, 692 So.2d 947, 950 (Fla. 3d DCA 1997) (reversing final judgment where plaintiff had alleged three specific acts of negligence, but tried the case on a fourth alleged act that was never pled).
Espinoza claims on this appeal that the issue of the adequacy of Fi-Shock's warning was tried by the implied consent of the parties. Espinoza is wrong. The record affirmatively shows that when Espinoza first raised this issue one week prior to trial, at the second summary judgment hearing, Fi-Shock specifically objected. In addition, Fi-Shock objected to Espinoza's opening statement when the adequacy of its warnings was raised; moved in limine to exclude evidence regarding the "inadequacy" of its warnings; and objected to the testimony of Espinoza's expert regarding the adequacy of the warnings.[9] Despite these objections, Espinoza claims that Fi-Shock's failure to object to Mr. Triana's testimony, regarding the instruction manual and the warnings contained therein, constituted implied consent by Fi-Shock to try Espinoza's failure to adequately warn claim. Triana's testimony, however, clearly addressed the issue of his own negligence, for which he was being tried, and as such Fi-Shock's failure to object cannot be construed as its implicit consent to the trial of an unpled theory. See Raimi v. Furlong, 702 So.2d 1273, 1285 (Fla. 3d DCA 1997)(holding that "failure to object cannot be construed as implicit consent to try an unpled theory when the evidence introduced is relevant to other issues properly being tried."), citing Bilow v. Benoit, 519 So.2d 1114, 1116 (Fla. 1st DCA 1988); Wassil v. Gilmour, 465 So.2d 566, 569 (Fla. 3d DCA 1985). See also Nichols v. Michael D. Eicholtz, Enterp., 750 So.2d 719, 720 (Fla. 5th DCA 2000)(an unpled theory may not be tried by implied consent when the evidence presented at trial is relevant to other issues which are properly being tried).
Finally, Espinoza argues that the trial court denied his proposed jury instruction and interrogatory not on procedural groundsthe failure to plead the *459 failure to adequately warn claimbut rather on the substantive grounds that Florida law imposed a duty on Fi-Shock to warn the Trianas for the purpose of protecting Espinoza. Thus, Espinoza argues that the trial court's refusal to give the jury instruction and interrogatory cannot be defended on procedural grounds. Despite the reasoning of a trial court, a correct ruling will be upheld if there is a legal theory to support it. See Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999)(stating that "even though a trial court's ruling is based on improper reasoning, the ruling will be upheld if there is any theory or principle of law in the record which would support the ruling"). See also Rancho Santa Fe, Inc. v. Miami-Dade County, 709 So.2d 1388 (Fla. 3d DCA 1998)(denying certiorari where trial court applied the wrong standard of review but reached the correct result) (citing In Re Estate of Yohn, 238 So.2d 290, 295 (Fla.1970)). Because we find that the trial court correctly declined to give Espinoza's requested jury instruction and interrogatory, and because there has been no showing that the trial court abused its discretion, we affirm.
Affirmed.
NOTES
[1] Moreover, we also affirm the final judgment against the Trianas because they failed to preserve the issue for appeal. See City of Orlando v. Birmingham, 539 So.2d 1133, 1134 (Fla.1989)(appellate courts generally apply Florida Rule of Civil Procedure 1.470(b) to bar appeals regarding the giving of or the failure to give a jury instruction, where no objection was raised at the trial level.)(footnote omitted); Atlantic Coast Dev. Corp. v. Napoleon Steel Contractors, Inc., 385 So.2d 676 (Fla. 3d DCA 1980)(failure of a party to request omitted instruction precludes that party from raising that point as error on appeal). See also Papcun v. Piggy Bag Discount Souvenirs, Food & Gas Corp., 472 So.2d 880, 881 (Fla. 5th DCA 1985)(failure to contemporaneously object to a verdict form regarding defects, constitutes a waiver of such defects) (citing Gould v. Nat'l Bank of Fla., 421 So.2d 798, 802 (Fla. 3d DCA 1982)); Robbins v. Graham, 404 So.2d 769 (Fla. 4th DCA 1981).
[2] The third-party complaint was actually brought against Fi-Shock, Inc. as the manufacturer of the device, and Builders Square, Inc. as the store that had sold them the device. Builders Square's defense was provided by Fi-Shock.
[3] Following opening statements, Fi-Shock moved in limine to preclude the introduction of any testimony that Fi-Shock inadequately warned Triana because it failed to provide him with a warning sign regarding the electric fence.
[4] The front of the device's box said "Warning"-"delivers a mild shock to deter mischievous small animals"-"no danger of injury." There was no warning on the box that the device could cause injury to people. The instructions did tell buyers not to step over the electric wire when it was energized, but failed to inform consumers of the consequences of stepping over the device.
[5] Espinoza abandoned his claim for negligent distribution.
[6] The device's instruction manual specifically warned, in capital letters, to

NEVER INSTALL AN ELECTRIC FENCE NEAR A SWIMMING POOL, POND OR ANY WATER WHERE A SUBMERGED ANIMAL MIGHT COME INTO CONTACT WITH THE CHARGED WIRE.
[7] As previously discussed, the Trianas never objected to the trial court's omission of the requested interrogatory and jury instruction. Thus, the Trianas failed to preserve this issue for appeal and therefore we affirm the final judgment as to the Trianas and will only address Espinoza's arguments on appeal. See footnote 1, supra.
[8] "Prejudicial error requiring reversal of judgment or new trial occurs only where the error complained of has resulted in a miscarriage of justice. A miscarriage of justice arises where instructions are reasonably calculated to confuse or mislead the jury." Rucker v. Garlock, Inc., 672 So.2d 100, 101 (Fla. 3d DCA 1996).
[9] The record does not clearly illustrate why this evidence was admitted at trial, and we are confounded as to why the trial court would admit, over objection, evidence relating to a cause of action that was never pled by Espinoza.