990 So.2d 540 (2008)
Christy AILLS, Appellant/Cross-Appellee,
v.
Luciano BOEMI, M.D., and Luciano Boemi, M.D., P.A., Appellees/Cross-Appellants.
No. 2D07-233.
District Court of Appeal of Florida, Second District.
June 13, 2008.
Rehearing Denied September 29, 2008.
*542 Joel D. Eaton of Podhurst Orseck, P.A., Miami; and Garvin & Tripp, P.A., Fort Myers, for Appellant/Cross-Appellee.
Arthur J. England, Jr., and Edward G. Guedes of Greenberg Traurig, P.A., Miami; William R. Clayton of Greenberg Traurig, P.A., Fort Lauderdale; and Richard B. Mangan of Rissman, Barrett, Hurt, Donahue & McLain, P.A., Tampa, for Appellees/Cross-Appellants.
WALLACE, Judge.
Christy Aills appeals an order for a new trial on damages only entered in her medical malpractice action against Luciano Boemi, M.D., and Luciano Boemi, M.D., P.A. (collectively referred to as Dr. Boemi). The trial court entered the order for a new trial on damages only after Ms. Aills had rejected the trial court's earlier order for a remittitur of the damages awarded to her by a jury. Dr. Boemi cross-appeals the trial court's order denying his motion for a directed verdict on liability or, alternatively, an award of a new trial and the denial of his motion for a remittitur of the jury's award of future economic damages. We affirm the trial court's order denying Dr. Boemi's motion for a directed verdict on liability. However, we conclude that the trial court erred in permitting Ms. Aills' counsel to argue to the juryover Dr. Boemi's timely objectiona theory of medical negligence that was not within the issues presented at trial. For this reason, we reverse the order denying Dr. Boemi's motion for new trial and the order directing a new trial on damages only, and we remand for a new trial on all issues. Our disposition of Dr. Boemi's cross-appeal renders moot Ms. Aills' challenge to the proposed remittitur and Dr. Boemi's argument about the denial of his motion for a remittitur of the jury's award of future economic damages.

I. THE FACTUAL BACKGROUND

A. The Surgery and Its Aftermath
Dr. Boemi is a plastic surgeon. In February 2003, Ms. Aills consulted him about the performance of an elective surgical procedure. After speaking with Ms. Aills and conducting an examination, Dr. Boemi suggested to Ms. Aills that performing two distinct, but related, procedures would be the best way to achieve her goals. Ms. Aills ultimately decided to have Dr. Boemi perform the two surgical procedures that he had suggested. Before the surgery, Ms. Aills signed two consent formsone for each procedure. On April 16, 2003, Dr. Boemi performed the surgery on Ms. Aills at a surgery center in Lee County, Florida.
Afterwards, Ms. Aills had serious complications as a consequence of the surgery. *543 These complications became so severe that Dr. Boemi's trial counsel would later concede in his opening statement at trial that Ms. Aills had experienced "a horrific outcome." Ms. Aills remained under Dr. Boemi's care for approximately six weeks after the surgery. On June 2, 2003, Ms. Aills consulted Dr. Robert Brueck, another plastic surgeon, for further care. Dr. Brueck treated Ms. Aills extensively and performed numerous additional surgeries and procedures to treat and repair the consequences of the initial surgery performed by Dr. Boemi.

B. The Complaint
In August 2004, Ms. Aills filed an action for damages against Dr. Boemi. In her second amended complaint, Ms. Aills alleged not only that Dr. Boemi had negligently performed the two surgical procedures to which she had agreed but also that he had performed an additional third surgical procedure for which she had not given her consent. Ms. Aills' complaint asserted four separate causes of action against Dr. Boemi: count one, medical negligence; count two, battery; count three, lack of informed consent; and count four, fraud. Ms. Aills also asserted a claim for punitive damages.
In count one of her complaint, the claim for medical negligence, Ms. Aills alleged that Dr. Boemi was negligent in three particulars. First, Ms. Aills alleged that Dr. Boemi had negligently failed to obtain her informed consent to the proposed surgery. Second, Ms. Aills alleged that Dr. Boemi had negligently performed the surgical procedures. Third, Ms. Aills alleged that the design of the procedures that Dr. Boemi had performed was flawed. Notably, Ms. Aills did not allege any negligence by Dr. Boemi during the period in which he had treated her postoperatively. Ms. Aills never sought to amend her complaint to allege that Dr. Boemi had been negligent with regard to postoperative care.

C. The Evidence on the Issue of Negligence at Trial
Ms. Aills relied primarily on the testimony of two expert witnesses to prove her claims of negligence and lack of informed consent. One of these witnesses was Dr. Brueck, the board-certified plastic surgeon who had treated Ms. Aills after she had left the care of Dr. Boemi. The other expert was Dr. Paul Glat, another board-certified plastic surgeon. Both of these experts devoted a substantial portion of their testimony to the alleged omission by Dr. Boemi to adequately inform Ms. Aills of the risks of the surgery that he proposed to perform on her. Dr. Brueck and Dr. Glat also testified that Dr. Boemi performed a third surgical procedure on Ms. Aills, which was not explained to her and to which she had not consented.
With respect to Ms. Aills' allegations of negligence, neither Dr. Brueck nor Dr. Glat testified that Dr. Boemi had departed from the prevailing professional standard of care in connection with his postoperative treatment of Ms. Aills. In addition, neither of Ms. Aills' experts testified that Dr. Boemi's treatment of Aills after her surgery did anything to cause or to exacerbate her postsurgical complications. On the contrary, Dr. Brueck testified that "the design and execution of the [surgical] procedures is what caused the damage." Dr. Glat's testimony on this issue was similar. He testified that Ms. Aills' problems resulted from an inadequate blood flow caused by the procedures performed by Dr. Boemi.
Two board-certified plastic surgeons testified on Dr. Boemi's behalf. One of these plastic surgeons was Dr. Scott Spear. At the time of trial, Dr. Spear was chairman of the Department of Plastic Surgery and *544 a professor of plastic surgery at Georgetown University School of Medicine. Dr. Spear had also served as the president of the American Society of Plastic Surgery.
Dr. Spear testified that the surgical procedures that Dr. Boemi had performed on Ms. Aills were limited to the two procedures to which Ms. Aills had agreed. In other words, Dr. Spear denied that Dr. Boemi had performed a third surgical procedure on Ms. Aills for which she had not given her consent. Dr. Spear also testified that Dr. Boemi had appropriately warned Ms. Aills of the risks of the two procedures to which she had consented.
Dr. Spear acknowledged that Ms. Aills had experienced a very unfortunate outcome from the surgery. However, he testified that Dr. Boemi met the prevailing professional standard of care in connection with his treatment of Ms. Aills. According to Dr. Spear, the postsurgical complications experienced by Ms. Aills were within the known risks of the procedures to which she had consented.
Dr. Boemi's other expert witness was Dr. David Abrahamson. Dr. Abrahamson's testimony was substantially similar to the testimony of Dr. Spear.

D. The Verdict Form
The verdict form submitted to the jury in this case required the jury to make a separate determination of liability for each of the four causes of action that Ms. Aills had alleged against Dr. Boemi.[1] With respect to the negligence claim asserted in count one, the jury was asked to determine: "Was there negligence on the part of LUCIANO BOEMI, M.D.[,] in his treatment and care of CHRISTY AILLS which was a legal cause of loss, injury[,] or damage to Plaintiff, CHRISTY AILLS?" Neither of the parties requested an interrogatory verdict that would have required the jury to make separate findings on any particular theory of medical negligence.

E. The Remarks During Closing Argument
During his closing argument, Ms. Aills' trial counsel began to argue that Dr. Boemi had failed to provide appropriate care to Ms. Aills during the postoperative period. Dr. Boemi's counsel immediately objected to this line of argument. At a sidebar conference, Dr. Boemi's counsel explained that opposing counsel's remarks were improper because of the absence of any basis in the record "that the postoperative care was negligent" and "that it would have made a difference." Ms. Aills' counsel responded that his remarks were "fair comment" because "we have already put on testimony ... that the entire thing that this doctor did caused her to have her harm." The trial court overruled the objection.
After the objection was overruled, Ms. Aills' trial counsel continued his remarks with a description of what he said were the consequences of Dr. Boemi's postoperative negligence. Later in his closing argument, Ms. Aills' trial counsel returned to the theme of postoperative negligence. Counsel informed the jury that there were three separate grounds upon which they could find in favor of Ms. Aills on her negligence claim: (1) the design of the surgical procedures by Dr. Boemi; (2) the manner in which Dr. Boemi had performed the surgery; and (3) "the failure to detect *545 and treat a surgically caused impairment of blood supply," i.e., a deficiency in Dr. Boemi's postoperative care of Ms. Aills. The first two grounds were alleged in the complaint and supported by expert witness testimony from Dr. Brueck and Dr. Glat, but the third ground was not.

F. The Jury's Verdict
The jury returned a verdict in favor of Ms. Aills on her negligence claim. However, the jury's verdict was in favor of Dr. Boemi on Ms. Aills' claims for battery, lack of informed consent, and fraud. Thus the jury agreed that Dr. Boemi had been negligent in his care and treatment of Ms. Aills, but it rejected Ms. Aills' claim that Dr. Boemi had performed a third surgical procedure to which she had not consented. The jury's award of compensatory damages to Ms. Aills was as follows: (1) $100,000 for past medical expenses; (2) $150,000 for future medical expenses; (3) $4,000,000 for past noneconomic damages; and (4) $4,000,000 for future noneconomic damages. The jury declined to award any punitive damages against Dr. Boemi. The trial court subsequently entered a judgment on the verdict in favor of Ms. Aills and against Dr. Boemi in the amount of $8,250,000.

II. THE POSTTRIAL MOTIONS AND THE TRIAL COURT'S RULINGS
After the trial, Dr. Boemi filed a motion requesting the entry of a judgment in his favor in accordance with his prior motion for directed verdict. Alternatively, Dr. Boemi moved for a new trial. Dr. Boemi also requested a remittitur of the various awards of damages in the jury's verdict.
The trial court denied Dr. Boemi's motion for judgment in accordance with the previous motion for directed verdict. The trial court also denied Dr. Boemi's motion for a new trial. However, the trial court granted a remittitur of three of the four components of the jury's damages award. First, the trial court granted a remittitur of the jury's award for past medical expenses from $100,000 to $81,000. Ms. Aills conceded that the reduction in the amount of the award for past medical expenses was appropriate. Second, the trial court directed a remittitur of the past noneconomic damages award in the amount of $3,250,000. If Ms. Aills had accepted this remittitur, her award for past noneconomic damages would have been reduced from $4,000,000 to $750,000, a reduction of approximately 81% of the jury's award. Third, the trial court directed a remittitur of the future noneconomic damages award in the amount of $2,250,000. If Ms. Aills had accepted this remittitur, her award for future noneconomic damages would have been reduced from $4,000,000 to $1,750,000, a reduction of approximately 56% of the jury's award. The trial court denied Dr. Boemi's request for a remittitur of the jury's award of future medical expenses. Although Ms. Aills accepted the remittitur of the past medical expenses award, she rejected the remittitur of the awards for noneconomic damages. Accordingly, the trial court ordered a new trial on damages only. Ms. Aills appealed the trial court's order granting a new trial on damages, and Dr. Boemi cross-appealed.

III. THE PARTIES' POINTS ON APPEAL
On appeal, Ms. Aills raises two challenges to the trial court's order for a remittitur of the noneconomic damages awards. First, Ms. Aills argues that the grounds stated in the order are insufficient to support the proposed remittitur. Second, Ms. Aills contends that the trial court abused its discretion in finding that the jury's awards for past and future noneconomic *546 damages were excessive and that the evidence would support an award of no more than approximately 30% of the jury's verdict for these two categories of damages.
On his cross-appeal, Dr. Boemi raises four points. First Dr. Boemi argues that the trial court should have granted him a directed verdict on liability because Ms. Aills failed to establish the applicable standard of professional care and a breach of that standard by Dr. Boemi. Second, Dr. Boemi contends that the trial court should have granted him a new trial based on the comments made during closing argument by Ms. Aills' counsel concerning Dr. Boemi's asserted negligence in the postoperative period. Third, Dr. Boemi also urges that the trial court erred in denying him a new trial based on the admission of a series of "graphic, blown-up" photographs depicting Ms. Aills' condition and the course of her treatment after the initial surgery. Finally, Dr. Boemi claims that the evidence was insufficient to support the award of future medical expenses.
We conclude that the trial court did not commit error in denying Dr. Boemi's motion for a directed verdict on liability. We also conclude that the trial court did not abuse its considerable discretion in denying Dr. Boemi's motion for new trial based on the admission of the photographs into evidence. These issues do not warrant further discussion.
However, we agree with Dr. Boemi that the trial court did abuse its discretion in denying his motion for new trial based on opposing counsel's comments in closing argument concerning Dr. Boemi's asserted negligence during the postoperative period. Thus the trial court should have granted Dr. Boemi a new trial on all issues. Our disposition of Dr. Boemi's point on the closing argument issue renders moot both Ms. Aills' challenge to the remittitur of past and future noneconomic damages and Dr. Boemi's complaint about the award of future medical expenses. It follows that we need not address these issues. Accordingly, we turn now to a discussion of the closing argument issue.

IV. DISCUSSION

A. The Standard of Review Is Abuse of Discretion
A trial court may grant a new trial based on improper closing argument by counsel. See Allison Transmission, Inc. v. J.R. Sailing, Inc., 926 So.2d 404, 407 (Fla. 2d DCA 2006) (citing Carlton v. Johns, 194 So.2d 670 (Fla. 4th DCA 1967)). Our standard of review for a trial court's ruling on a motion for new trial based on a claim of improper closing argument is abuse of discretion. See LeFave v. Bordonaro, 975 So.2d 470, 471 (Fla. 2d DCA 2007).

B. Postoperative Negligence Was Not an Issue When the Trial Began
Pleading requirements in medical negligence cases are pertinent to our consideration of the closing argument issue. We note that general, conclusory allegations are insufficient to state a cause of action for medical negligence. See Drew v. Knowles, 511 So.2d 393, 395 (Fla. 2d DCA 1987). Instead, "`[w]hile it is sufficient to charge in general terms that an injury was negligently inflicted, the acts done must be stated, and it must appear from the facts averred, and not from mere conclusion, that the negligence caused or contributed to the injury.'" Hill v. Boughton, 146 Fla. 505, 1 So.2d 610, 613 (1941) (quoting Merriam v. Hamilton, 64 Or. 476, 130 P. 406 (1913)); see also Bir v. Foster, 123 So.2d 279, 283 (Fla. 2d DCA 1960) (concluding that a complaint stated a cause of action for medical malpractice *547 where it alleged acts and omissions that proximately caused the injury to the plaintiff and also alleged that these acts and omissions were negligently performed by the defendants). The theories of medical negligence alleged in the complaint are not merely academic. In an action for medical malpractice, a theory of negligence not alleged in the complaint or tried by consent may not be submitted for the jury's consideration over an appropriate objection. See Robbins v. Newhall, 692 So.2d 947, 949-50 (Fla. 3d DCA 1997) (holding that an unpleaded theory of negligence was not subsumed within the complaint's general allegations of negligence and that it was error to submit the unpleaded theory to the jury over a defense objection); see also Arky, Freed, Stearns, Watson, Greer, Weaver & Harris, P.A. v. Bowmar Instrument Corp., 537 So.2d 561, 563 (Fla. 1988) (reaching a similar result in an action for legal malpractice).
Here, Ms. Aills' second amended complaint alleged three separate theories of medical negligence. However, none of these three theories concerned Dr. Boemi's postoperative care of Ms. Aills. Dr. Boemi appears to have been unaware of the possibility that Ms. Aills would rely at trial on a theory of postoperative negligence. In fact, during his opening statement at trial, Dr. Boemi's attorney told the jury:
The evidence in this case is not believed [sic] will show that there is any criticism of the care of Dr. Boemi after the surgery. In other words, that there was any careany criticism of his care after the surgery that caused additional harm to Miss Aills.
Moreover, Ms. Aills' trial counsel never stated at any point before closing argument that Ms. Aills was seeking a recovery based on any postoperative negligence by Dr. Boemi. Thus defense counsel's statement appears to have been an accurate assessment that postoperative negligence was not an issue in the case when the trial began.

C. The Issue of Postoperative Negligence Was Not Tried by Consent
Notwithstanding the absence of any theory of postoperative negligence in her complaint, Ms. Aills argues that the issue was tried by consent. See, e.g., Smith v. Mogelvang, 432 So.2d 119, 121-25 (Fla. 2d DCA 1983) (discussing Florida Rule of Civil Procedure 1.190(b) and the trial of issues not raised in the pleadings by express or implied consent). As previously noted, Ms. Aills' expert witnesses did not offer any testimony that Dr. Boemi's postoperative care of Ms. Aills breached the prevailing professional standard of care in a manner that caused or contributed to Ms. Aills' injuries. Instead, their testimony was devoted to issues of informed consent, the design of the surgical procedures that were performed, the manner in which the surgical procedures were performed, and the asserted performance of a third surgical procedure to which Ms. Aills had not consented. In support of her argument that the issue of Dr. Boemi's postoperative negligence was tried by consent, Ms. Aills submits that evidence was received without objection concerning postoperative negligence from two unlikely sources: (1) Dr. Spear, one of the defense expert witnesses, and (2) Dr. Boemi himself.
We have carefully reviewed the testimony of both Dr. Spear and Dr. Boemi. Not surprisingly, we find that neither of them offered any testimony that Dr. Boemi had departed from the prevailing professional standard of care in connection with his care of Ms. Aillspostoperatively or otherwise. Moreover, neither Dr. Spear nor Dr. Boemi testified that any action or omission by Dr. Boemi during the postoperative *548 period caused additional harm to Ms. Aills. Since there was no evidence presented to support the theory of postoperative negligence, the issue cannot be said to have been tried by consent.
Furthermore, Ms. Aills did not move at the close of all the evidence in the case to amend the pleadings to conform to evidence presented of postoperative negligence. Granted, a motion to conform the pleadings to issues that have been tried by consent is not strictly necessary. See Robbins v. Grace, 103 So.2d 658, 660 (Fla. 2d DCA 1958); Di Teodoro v. Lazy Dolphin Dev. Co., 418 So.2d 428, 430 (Fla. 3d DCA 1982) ("[A]s a result of the implied consent, it became unnecessary for the plaintiffs to have even made a motion to amend the pleadings to conform to the evidence."). However, such a motionmade at the close of all the evidencewould have alerted both defense counsel and the trial court to Ms. Aills' position that the issue of postoperative negligence had been tried by consent. The knowledge that Ms. Aills was asserting such a claim would have been critical to the trial court and the parties not only in preparing the jury instructions and the verdict form but also in defining the issues that counsel could properly argue to the jury in their closing arguments. Thus the absence of a motion to conform the pleadings to the evidence at trial suggests that Ms. Aills' trial counsel did not view the testimony of Dr. Spear and Dr. Boemi as tending to prove a theory of Dr. Boemi's postoperative negligence.

D. The Challenged Remarks Were Improper
It is axiomatic that a party may not be held liable on an issue that was neither pleaded nor tried by consent. See Arky, Freed, 537 So.2d at 563; Triana v. Fi-Shock, Inc., 763 So.2d 454, 458 (Fla. 3d DCA 2000); Michael H. Bloom, P.A. v. Dorta-Duque, 743 So.2d 1202, 1203 (Fla. 3d DCA 1999); Newhall, 692 So.2d at 949-50. It follows that an attorney may not suggest to the jury in closing argument that the jury may find the opposing party liable on a theory outside the issues in the case. See Maercks v. Birchansky, 549 So.2d 199, 199 (Fla. 3d DCA 1989) (holding that counsel's argument commenting on the expense of past medical expenses was improper when there was no claim for past medical expenses as damages). "While attorneys are given broad latitude in closing arguments, the arguments must be confined to the evidence and to the issues and inferences which can be drawn from the evidence." Riggins v. Mariner Boat Works, Inc., 545 So.2d 430, 433 (Fla. 2d DCA 1989) (citing Alford v. Barnett Nat'l Bank of Jacksonville, 137 Fla. 564, 188 So. 322 (1939)).
In this case, the issue of postoperative negligence was neither pleaded nor tried by consent. Ms. Aills' closing argument submitted to the jury a theory of liability that was not within the issues in the case. Thus counsel's remarks about postoperative negligence and his suggestion to the jury that they should find Dr. Boemi liable for such negligence were improper.

E. The Challenged Remarks Were Not Harmless
We are unable to conclude that the challenged remarks were harmless. Here, Ms. Aills unquestionably had a very bad outcome as a result of the surgery, but the issues of Dr. Boemi's negligence relative to informed consent, the design of the surgery, and the performance of the surgery were vigorously contested. The jury found in favor of Dr. Boemi on all of Ms. Aills' claims except the claim for medical negligence. Ms. Aills' trial counsel used particularly dramatic and vivid rhetoric to describe Dr. Boemi's asserted postoperative *549 negligence and its consequences to Ms. Aills. Unquestionably, these remarks were calculated to elicit an emotional response from the jury. Although we have only read counsel's remarks from a cold transcript, we find them to be disturbing and inflammatory.
Defense counsel had no notice that Ms. Aills' trial counsel would rely on an unpleaded theory of postoperative negligence during closing argument. Thus, not only did he have no occasion to offer evidence to rebut such a theory, but he also had no reason to request a separate interrogatory verdict on an issue that had not been pleaded or tried by consent. As previously noted, Ms. Aills' claim for medical negligence was submitted to the jury on a general verdict form. Because of the argument made by Ms. Aills' trial counsel on the theory of postoperative negligence, there is a substantial possibility that the jury found Dr. Boemi liable to Ms. Aills on her negligence claim on a theory that was completely outside the issues that were presented at trial. For this reason, we conclude that the trial court's error in overruling Dr. Boemi's objection to the challenged remarks was not harmless.

F. The Two-Issue Rule Is Inapplicable.
Finally, we have considered Ms. Aills' argument based on the two-issue rule. See Barth v. Khubani, 748 So.2d 260, 261-62 (Fla.1999); First Interstate Dev. Corp. v. Ablanedo, 511 So.2d 536, 538 (Fla.1987); Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181, 1185-86 (Fla.1977); see generally Philip J. Padovano, Florida Civil Practice § 25.4 (2007-08 ed.) (discussing the two-issue rule and its application). Under the two-issue rule, "where there is no proper objection to the use of a general verdict, reversal is improper where no error is found as to one of two issues submitted to the jury on the basis that the appellant is unable to establish that he has been prejudiced." Whitman v. Castlewood Int'l Corp., 383 So.2d 618, 619 (Fla.1980) (citing Colonial Stores, 355 So.2d at 1186).
Here, Ms. Aills presented sufficient evidence to support a verdict against Dr. Boemi based on the three theories of medical negligence that were pleaded in the complaint: (1) the negligent failure to obtain an informed consent to the surgery; (2) the manner in which the surgical procedures were performed; and (3) the design of the surgical procedures. But there was no evidence of any postoperative negligence. Ms. Aills concedes that she failed to present any evidence of causation on the theory of Dr. Boemi's postoperative negligence, and "the possibility therefore exists that Dr. Boemi was found liable on this unproven theory." Nevertheless, she argues that the two-issue rule "forecloses the argument" based on the absence of such proof. Cf. Whitman, 383 So.2d at 619-20 (holding that where the issue of the defendant's liability was submitted to the jury without objection on a general verdict, the two-issue rule precluded reversal even though the evidence was insufficient to support the defendant's liability under one of the two alternative theories presented to the jury). Stated differently, Ms. Aills asks us to hold that Dr. Boemi could properly be "sandbagged" by being found liable on a theory of liability that neither he nor his counsel had any inkling would be submitted to the jury for its consideration until Ms. Aills' trial counsel was in the middle of his closing argument. Cf. Tamiami Trail Tours, Inc. v. Cotton, 463 So.2d 1126, 1128 (Fla.1985) (concluding that a defendant was improperly "sandbagged" where it was found liable on an unpleaded theory that it never had an opportunity to rebut at trial); Cedars Med. Ctr., Inc. v. Ravelo, 738 So.2d 362, 367-68 (Fla. 3d DCA 1999) (reversing a judgment against a hospital where the case was submitted to the jury on a theory of liability that had not been pleaded or tried by consent).
*550 We are not prepared to extend the application of the two-issue rule in this manner. To uphold a finding of liability for damages based on a theory of liability that has neither been pleaded nor tried by consent would be inconsistent with well-established precedent. See Goldschmidt v. Holman, 571 So.2d 422, 423-24 (Fla.1990); Arky, Freed, 537 So.2d at 563; Michael H. Bloom, P.A., 743 So.2d at 1203; Newhall, 692 So.2d at 949-50. In addition, such an application of the two-issue rule would violate the requirements of procedural due process. See Tamiami Trail Tours, 463 So.2d at 1128.

V. CONCLUSION
For these reasons, we conclude that the trial court abused its discretion in failing to grant Dr. Boemi a new trial on all issues based on the improper closing argument concerning postoperative negligence. On Dr. Boemi's cross-appeal, we reverse the trial court's order denying Dr. Boemi's motion for a new trial and the order granting a new trial on damages only. We affirm the order denying Dr. Boemi's motion for judgment in accordance with his previous motion for directed verdict. We remand for a new trial on all issues. On remand, the trial court shall enter an order vacating the final judgment. Our disposition of the cross-appeal moots the issues raised in Ms. Aills' appeal and Dr. Boemi's cross-appeal of the order denying his motion for a remittitur of the jury's award of future economic damages.
Affirmed in part, reversed in part, and remanded for a new trial.
NORTHCUTT, C.J., and WILLIAMS, CHARLES E., Associate Judge, Concur.
NOTES
[1] Dr. Boemi objected to the portion of the verdict form that called for the jury to make a separate determination on count three of Ms. Aills' complaint, the claim for lack of informed consent. Dr. Boemi argued that this claim was subsumed within the claim for medical negligence alleged in count one of the complaint. The trial court overruled Dr. Boemi's objection to the verdict form. Dr. Boemi does not challenge this ruling.